Wilson  vs.  The State.

## WILSON vs. THE STATE.

1. INDICTMENT :  *For selling liquor near an academy, college, etc.*

An indictment for selling liquor within three miles of an academy, in violation of the act of March 2, 1875, is not defective for failing to allege that the academy is in the county in which the indictment was found, if it avers that the order of the county court prohibiting the sale within three miles of the designated academy, was made in compliance with the act. Nor need it allege that the order of the county court was made upon the petition of a majority of the adult residents of the township, if it allege that the order was made in compliance with the statute.

2. SAME:  *Exceptions in statute.*

When an exception is not in the enacting clause of a statute, it need not be negatived in the indictment: it is matter of defense.

3. LIQUOR :  *Order of county court prohibiting sale of irrevocable :  Subsequent license void.*

When the order is made, the power vested in the county court by the act is exhausted, and it has no power to revoke the order upon a subsequent petition; and a subsequent license to sell liquor is no protection against a prosecution for selling within the prohibited limits.

Wilson vs. The State.

APPEAL from *Conway* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

*Fletcher*, for appellant.

*Basham, contra.*

ENGLISH, C. J.   The indictment in this case, which was found at the March term, 1879, of the circuit court of Conway county, charges Al. Wilson with a misdemeanor, committed as follows :

" That said Al. Wilson, on the twenty-second day of February, 1879, in the county of Conway and state of Arkansas, unlawfully did sell one pint of spirituous liquor to one T. A. Rogers, within three miles of the Masonic Male and Female academy, while pupils were being taught in the same, when the county court of said Conway county had made an order, in compliance with an act of the legislature of the state aforesaid, approved the second day of March, 1875, prohibiting the sale or giving away of spirituous liquors within three miles of said academy, and which said order was then and there of record in the office of the county clerk within and for the county aforesaid, against the peace," etc.

The defendant entered, in short, upon the record, a demurrer to the indictment, which the court overruled ; he then pleaded not guilty, was tried by a jury, and convicted ; moved in arrest of judgment and for a new trial ; the motion was overruled, and he took a bill of exceptions and appealed.

The demurrer was general and the motion in arrest was upon the ground that the indictment did not state facts sufficient to constitute a public offense within the jurisdiction of the court.

Wilson vs. The State.

1. INDICT-
MENT:

For sell-
ing liquor
near acad-
emy, etc.

I. It is objected here that the indictment did not allege that the Masonic Male and Female academy was situated in Conway county.

It is enacted by section 1 of the act of March 2, 1875, under which the indictment was prepared: "That it shall be unlawful for any person to sell or give away vinous, spirituous or intoxicating liquors within three miles of any academy, college or university in this state, while pupils are being taught or instructed in the same." *Acts 1875, p. 206.*

The indictment follows the language of this section. It alleges the sale to have been made in Conway county, and within three miles of the academy named, while pupils were being taught in the same.

No further averment would have been requisite, had the act, of itself, been made to operate in all places where such schools were located, from the time it became a law. The act is what is known as a local option law. By its fourth section, it is not to operate for the benefit of any such school until a majority of the adult residents of any township of any county in which said academy, etc., is located, shall, by petition, procure an order of the county court of their county, prohibiting the sale, etc., of spirituous liquors, etc., within three miles of such academy. Hence it was necessary for the indictment to allege, as it did, that such order had been made before the sale charged to have been criminal.

True the indictment does not allege, either in charging the sale or in averring the order of the county court, that the academy was in Conway county, but it avers that the order was made in compliance with the act, which is referred to, and it would not be in compliance with the act if the academy was not in Conway county.

The indictment is for a misdemeanor, and its allegations are sufficiently certain to advise the accused of the crime intended to be charged against him, and to protect him against a further indictment for the same offense; and upon the trial the burden was upon the state to prove a valid order of the county court, and a sale within the prohibited limits.

II. It is further objected that the indictment does not negative the exception made by the second section of the act, in favor of druggists who sell liquors for medical purposes, on written certificates of physicians.

*2. ———: Exceptions in statute, when to be negatived.*

The exception is not in the enacting section of the statute, and need not be negatived, but is matter of defense. *Butler v. The State, 10 Ark., 299; Wilson v. The State, 33 Ark.*

III. It is also objected that the indictment does not allege that the order of the county court was made upon the petition of a majority of the adult residents in the township in which the academy is situated.

It was sufficient to aver that the order was made in compliance with the statute, without setting out the facts on which it was based.

IV. On the trial, the court permitted the state to read in evidence to the jury the record entry of the order of the county court of Conway county, prohibiting the sale, etc., of liquors, etc., within three miles of the Masonic Male and Female academy, against the objection of the defendant; and this ruling of the court is made ground of the motion for a new trial.

The objection, as set out in the bill of exceptions, is general, but it is submitted here that the order does not show upon its face that the academy is in Conway county.

The record entry read in evidence shows that the acad-

27

emy is situated in the town of Lewisburg, Wilborn township, and that the order was made the fifth of January, 1876, by the county court, then holding a regular term, at the court-house in the town of Lewisburg, in Conway county, upon a petition of a majority of the adult residents of said Wilborn township. The academy is styled, in the entry, the Masonic Male and Female academy of Lewisburg.

The entry does not state in so many words that the academy is situated in Conway county, but it does show that it is situated in the town of Lewisburg, where the county court was then holding a term, in the courthouse of that county.

The order upon the face of the record read in evidence, appears to be regular, and in compliance with the statute.

The act was held constitutional in *Boyd v. Bryant et al., ante, 69.*

V. It was made ground for a new trial that the court admitted the testimony of Dr. W. A. C. Sayle, against the objection of defendant.

Before stating the testimony of Dr. Sayle, the testimony of two witnesses previously examined may be stated.

T. A. Rogers testified that some time during the month of February, 1879, he purchased whisky by the drink from the defendant, on several occasions, at the town of Morrilton, about one mile from the school-house in Lewisburg, in Conway county, Arkansas.

M. W. Steele testified that he was one of the trustees of the Lewisburg Masonic Male and Female academy, situated in the town of Lewisburg, and that it had been the intention of the trustees to maintain a school for the instruction of pupils in said academy for at least ten months in each year; that not more than two teachers were ever

engaged in said academy at one time; and that during the month of February, 1879, Miss Lee taught a school in said academy, which lasted from September, 1878, until June, 1879; that the number of students taught by her was small.

. Dr. W. A. C. Sayle testified that the school at Lewisburg, which had been previously known as the Lewisburg Male and Female academy, was, about eight or nine years ago, taken charge of by the Masonic fraternity at Lewisburg, by the consent of the people in and about Lewisburg, and had been managed and controlled by said fraternity ever since. That when the Masons took charge of the school they changed the name to the Lewisburg Masonic Male and Female academy, and it had been known by that name ever since. That witness was a trustee of said school, and that the school had been kept up during the scholastic year the whole time.

Upon what ground the defendant objected to Dr. Sayle's testimony does not appear from the bill of exceptions, nor has his counsel here indicated any objection to its competency or relevancy.

VI. The next ground of the motion for a new trial is, that the court erred in refusing to permit defendant to read in evidence the record entry of an order of the county court of Conway county, revoking the order of said court prohibiting the sale of liquors within three miles of the Lewisburg Masonic Male and Female academy; and also in excluding the license of said court authorizing defendant to sell liquors at Morrilton.

3. LIQUOR: Order of county court prohibiting sale of,near academy, etc., irrevocable.

The order appears to have been made on the fifth of October, 1876, as follows:

"In the matter of the petition to authorize the selling and giving away of spirituous liquors within three miles

of the Masonic Male and Female academy of Lewisburg, Wilborn township, Conway county, etc. Now, on this day come J. T. Moore, etc., and others, and present their petition, praying this honorable court to grant and make an order, according to the statute in such cases made and provided, authorizing the selling and giving away of spirituous liquors within three miles of the Masonic Male and Female academy of Lewisburg, in Wilborn township, in said county, etc., and the court, after examining said petition, found the same to be signed by a majority of the adult residents and voters of said township, that the signatures thereto are authenticated by affidavits, and in all respects regular, and in compliance with the act of the general assembly approved March 2, 1875, regulating the subject-matter herein; the court, after due consideration, doth say that said petitioners have fully complied with the law, and that the order prayed for should be granted: It is therefore ordered by the court, that the selling and giving away of spirituous liquors within three miles of the Masonic Male and Female academy situated in the town of Lewisburg, Wilborn township, Conway county, etc., be and the same is hereby authorized from henceforth, existing laws regulating the same being complied with."

Section 4 of the act of March 2, 1875, provides:

"That whenever the adult residents of any township of any county desire to avail themselves of the provisions of this act, a majority of them shall petition the county court of their county, setting forth the fact that an academy, institute of learning, or university, in which pupils are taught, is located in their township or district, and praying that the sale or giving away of spirituous liquors be prohibited within three miles of the same; whereupon, should said county court be satisfied that a majority of said resi-

dents so petition, shall make an order in accordance with said prayer, and *from thenceforth* it shall not be lawful to vend or give away any spirituous liquors within the limits aforesaid."

The sixth section fixes a penalty for violating the provisions of the act, at not less than $25 nor more than $100.

On the petition of a majority of the adult residents of Wilborn township, the county court made the prohibiting order of the fifth of January, 1876, and from thenceforth, in the language of the act, it was unlawful to vend or give away spirituous liquors within three miles of the academy named in the order, under the penalty prescribed by the act.

On the fifth of October, 1876, the county court, on the petition of a majority of the "adult residents and voters" of the township, undertook, in effect, to revoke the prohibiting order, and open the way for the sale of spirituous liquors within three miles of the academy.

There is no provision of the act of the second of March, 1875, or any other act, authorizing the county court to make the second order.

The legislature might, in the exercise of the police power, for the preservation of order and good morals, and the protection of school pupils against temptation to dissipation, have absolutely prohibited the sale, for drink, of spirituous liquors, within three miles of academies, etc. But it was deemed expedient to pass prohibiting acts, and leave it optional with a majority of the adult residents of any township, in which such school was, or might be, located, to apply to the county court to make an order giving force and effect to the act for the benefit of such school. When the order was so made, in this case, the act was as effectually put into operation over the territory

embraced in the order, as if the legislature had made it the absolute law of that territory from the moment of its passage.

The county court was empowered, upon the proper petition, to put the act in force in the particular limits, but no power was delegated or confided to it to make an order, at any subsequent time, upon any petition whatever, in effect repealing the law within such limits.

Counsel for appellant submits that the law was put into force by the will of the people of Wilborn township, and that it was revoked by their will. This is plausible, but the people of townships must express their will in legal and constitutional modes. The act authorized the adult residents of the township (females as well as males) to express their will as to whether it should be put in force for the benefit of the academy in their township, but did not invite them to express any will, through the county court, as to its revocation. This they may do through their representation in the legislature. The second petition, and the order of the county court upon it, was voluntary and authorized by no law. The order would have been as valid without the petition as with it; and the expression of the adult residents of the township, at a township meeting, held of their own accord, would have been as effectual to displace the statute, after legally put in force, as a petition to the county court.

In the absence of legislation, the county court has no power to grant licenses to sell spirituous liquors, or to prohibit the sale thereof under penalties. By the act of March 2, 1875, it was authorized, upon the petition of a majority of the adult residents of any township in which an academy, college or university was located, to make an order prohibiting the sale, etc., of spirituous liquors within

three miles of such school. When the order is made, the power vested in the court by the act is exhausted, and there is no provision for it to make the order on a subsequent petition.

The act of March 8, 1879, authorizes the electors of townships and wards of cities, at each general election, to express their will as to the granting or withholding of licenses to keep dramshops or drinking saloons in their townships or wards; and the county courts are empowered to grant or refuse licenses according to the result of such elections. The vote of a township or ward may be in favor of license at one election and against it at another, and so the fortune of the dramshop or saloon-keeper may fluctuate with the will of the electors. But suppose the law had authorized but one election, and that should result in any township or ward against license, could the electors, of their own accord, without authority of law, hold a subsequent election, and empower the county court to grant license? We think not.

The legislature of 1879 passed acts prohibiting the sale, etc., of spirituous liquors, etc.. within three miles of Evening Shade college, Pleasant Ridge academy, the town of El Dorado, and Lamartine, providing for no petition of local residents, or orders of county courts. (*Acts of 1879, pp. 10, 21, 22, 66.*) Similar acts were passed by the legislature of 1875, for the protection of Judsonia university, (*Acts of 1875, p. 188*), certain sections in Franklin county, (*ib., p. 194*), El Paso, in White county, (*ib., p. 243*), Quitman college, (*ib., p. 245*), and the Industrial university, (*ib., p. 247*).

We find no provision in any act, except the act of March 2, 1875, leaving it optional with the adult residents of a township to put the law in operation for the protection of a school; and in it, as we have above seen, no provision is

made for a petition to the county court to revoke an order putting the act in force. If the local residents may, at will, repeat such petitions, and the county court may make and revoke such orders at their pleasure, there might be no stability in the law, and the protection of the school might vacillate with the successful or non-successful efforts of persons who wish to sell ardent spirits, in procuring subscribers to petitions. No such policy is indicated in the legislation for the protection of pupils of schools against temptation to dissipation and vicious habits.

The county court having no legal power to make the revoking order, it is void, and the court did not err in excluding it from the jury.

The revoking order being invalid for want of power in the county court to make it, it follows that the after grant of license to appellant to retail spirituous liquors was of no value to protect him against a prosecution for selling within the limits where such sales were prohibited by the act of the second of March, 1875.

VII. In the motion for a new trial, it is assigned as further ground that the court erred in giving the second and third instructions asked for by the state, and in refusing the third and fourth moved for defendant.

The court instructed the jury, first, that it devolved upon the state to prove every material allegation of the indictment, and that defendant was presumed innocent until his guilt was proven by competent testimony beyond a reasonable doubt.

(a) The court also instructed the jury, second, against the objection of defendant, that if they believed from the evidence that defendant, at any time within one year next before the finding of the indictment, within three miles of the Masonic Male and Female academy, in the county of

Conway, etc., did sell to T. A. Rogers any quantity of spirituous liquor, and that at the time such sale was made, said institution of learning was in progress and pupils being taught in the same during the scholastic year, and that prior thereto the county court of Conway county had made an order prohibiting the sale of spirituous liquors within three miles of said academy, they would find defendant guilty, and assess his punishment at a fine of not less than $25 nor more than $100.

There is no valid objection to this instruction. The court, in substance and effect, charged the jury by it, that if the state had proven the material allegations of the indictment, they should find the defendant guilty, etc.

(b) The third instruction for the state, and to which defendant objected, is as follows :

"It is shown by the evidence that the academy was originally incorporated as the Lewisburg Male and Female academy, and it was afterwards commonly known as the Lewisburg Masonic Male and Female academy, or the Masonic Male and Female academy. That is not a material variance. It is sufficient if one is a continuation of the other, and a school has been taught in the same."

The indictment describes the academy in question as the Masonic Male and Female academy. Dr. Sayle testified that it was originally known as the Lewisburg Male and Female academy, and after the Masons took charge of it, eight or nine years before the trial, it was called the Lewisburg Masonic Male and Female academy. In the order of the county court, read in evidence, it is styled the Masonic Male and Female academy of Lewisburg. There was no substantial variance between its description in the indictment and the evidence. It was sufficiently identified. It was not material whether it was incorporated or not.

The third instruction given for the state is subject to verbal criticism only.

(c)   The *first* instruction moved for the defendant, and refused by the court, is, that—

" The burden of proof in a misdemeanor is governed by the same rule as a felony, and every material allegation in the indictment must be proven by the state, not as in civil cases, but beyond a reasonable doubt."

In the first instruction given for the state, the court charged the jury, in effect, that the burden of proving all of the material allegations of the indictment, beyond a reasonable doubt, was upon the state.

And the court gave the second instruction moved by defendant, that it devolved on the state to prove beyond a reasonable doubt that there was an academy known as and called the Masonic Male and Female academy, situated in Conway county, etc.; that the county court of said county made an order in compliance with an act of the legislature approved March 2, 1875, prohibiting the sale or giving away of spirituous liquors within three miles of said academy, and that the defendant, Al. Wilson, subsequently to the making of said order, and within one year before the finding of the indictment, sold spirituous liquors to T. A. Rogers, within three miles of said academy, while pupils were being taught therein.

This instruction covered all of the material allegations of the indictment, and imposed the burden of proving them, beyond a reasonable doubt, upon the state.

There seems to have been a purpose in the first instruction moved for defendant, and refused by the court, to have the impression made upon the minds of the jury that the same weight of evidence was required in a misdemeanor as in a case of felony, to warrant conviction.

In *The State v. King, 20 Ark., 166,* the law of doubts in criminal cases was ruled as follows:

" It is not necessary to a conviction in any criminal case, that *all the allegations* in an indictment should be proven beyond *all doubt.* The rule is, that the jury are not to find the defendant guilty upon mere preponderance of evidence, but that they must be satisfied, *beyond a reasonable doubt,* that the proof sustains the material allegations of the indictment, otherwise they must acquit. And this rule doubtless applies to misdemeanors as well as to felonies. The state must establish the guilt of the accused in all cases before he can be condemned, and he is entitled, by a humane provision of the law, to the benefit of all reasonable doubts. It is doubtless true, however, that a jury should be more cautious in making up their judgment in cases involving the liberty or life of the accused, than in cases punishable by fine only, but in no case should they return a verdict against the accused when they really have a reasonable and well-founded doubt of his guilt."

The law of doubt was sufficiently applied to the case in the instructions given by the court to the jury, without the first instruction moved for defendant, which was so expressed as not to meet the approbation of the court, and might, if given, have made a wrong impression on the minds of the jurors.

(*d*) The third instruction moved for defendant, and refused by the court, follows:

" By academy is meant a seminary of learning, or school, holding a rank between a university or college and a common school. A university or college is the highest grade of institution of learning, and a common school is where the ordinary branches of education are taught."

His honor, the circuit judge, did not deem it necessary

for him to indorse all these definitions. The term *academy*, employed in the statute, in the indictment, in the prohibiting order of the county court, and by the witnesses, is one in common use, and doubtless the jury very well understood its meaning as ordinarily used and applied to a grade of schools.

(*e*) The fourth instruction moved for defendant, and refused by the court, follows:

"The proof that defendant sold liquors within three miles of the Lewisburg Masonic Male and Female academy, is not sufficient; but before the jury can convict in this case, they must find that defendant sold liquors within three miles of an academy in Conway county, known as and called the Masonic Male and Female academy."

This was an unsubstantial quibble about the name or style of the academy, as to which we have said enough above.

VIII. The last ground of the motion for a new trial is that the verdict was contrary to law and evidence.

The case was well enough made out by the state, and appellant offered no competent evidence to justify him in selling spirituous liquors within three miles of the academy.

The record disclosing no substantial error of law, to the prejudice of appellant, the judgment must be affirmed.

EAKIN, J. I reach the same conclusion with the majority of the court, upon somewhat different grounds. I look upon the first section of the act of March 2, 1875, as having been entirely neutralized by the fourth, which is really the whole law upon the subject, qualified by the second, third and fifth sections, and enforced by the sixth. The first section might be omitted without impairing the act.

I think the intention of the legislature was to frame a law, going into effect, *potentially*, at the end of ninety days, but with *dormant* powers to be evoked for particular townships, by the county court, upon certain contingencies; that is to say, first, there must be such an institution as the law contemplates, located in the township; and, second, the *adult residents* must petition the county court for the purpose, and the court must be satisfied that there is a majority of them concurring in the petition. Upon that it is the *order of the court*, a recognized political body, which sets the act in operation henceforth, and not the petition of the adult residents. The latter is the special and indispensable condition upon which, alone, the power of the court can be exercised, and the sole object of the power is to enable the county court, and make it obligatory, to protect the adult residents and those whose interests they guard, against the demoralizing influences which they suppose would spring from the sale of liquors near an institution important to their locality, and in which the women are as deeply interested as the men.

I am not prepared to say, therefore, that when the reason of the prohibition ceases, the statute intends that it shall nevertheless continue, although a majority of the adult residents may petition the court for its revocation, and the court may so order. I think the words, "from thenceforth," clearly indicate the *beginning* and not the *duration* of the operation of the act, and it is not necessary in this case to decide that the county court has not the power at some subsequent time, and under changed circumstances, to pass an order revoking the prohibition, upon the petition of a majority of the *adult residents* of the township. The order has more the character of a municipal ordinance than of a judgment which can not be

changed after the term. It is simply a police regulation, mandatory indeed upon the court, under certain circumstances, and valid whilst in force, but there is nothing apparent in the reason of the act, or in its nature, to induce the conclusion that the legislature meant the action of the court to fix a condition of things in perpetuity.

I am satisfied, however, that the power to change the order, if it exists, as the power to make it, is a special one, not appertaining to the general jurisdiction of the court, or coming within the ordinary range of its subject-matters. As it could not make the order of prohibition in accordance with the prayer, without first finding that a majority of the "adult residents" had joined therein, and its action would be in such case beyond its power and void, so it can not change the order, or annul it prospectively, without a formal withdrawal of the request of the same body.

Adult residents and voters means the body of persons residing in the township who have the elective franchise. They could not impose upon the county court the duty of making the prohibitory order in the first place, nor authorize the court to annul it afterwards. The record order was void and offered no ground of defense to the indictment. With this explanation I concur in the result.