## HUBMAN *v.* STATE.

### Opinion delivered January 11, 1896.

SALE OF WINE—STATUTES—REPEAL.—The wine act of April 3, 1889, providing "that it shall be unlawful for any person to sell wine at any place in this state, except as authorized in this act," and authorizing its sale, "in quantities not less than one quart, in any place where the sale of intoxicating liquors is licensed and authorized by law," impliedly repealed so much of Sand. & H. Dig. sec. 4851, as authorized the sale, without license,.of vinous liquors in original packages of not less than five gallons. (HUGHES and RIDDICK, JJ., dissenting.)

WINE—RIGHT TO SELL.—One who manufactures wine from grapes or berries grown by himself cannot lawfully sell it without license, under the act of 1889, except in places where the sale of intoxicating liquors can be licensed according to law.

Appeal from Lonoke Circuit Court.

JAMES S. THOMAS, Judge.

John Hubman was indicted for selling five gallons of wine "in a territory where the sale of wine was not licensed by the county court." The cause was tried upon an agreed statement of facts, which recites as follows:

"That defendant, John Hubman, did in Lonoke county, Arkansas, on the first day of November, 1894, sell G. W. Scott five gallons of wine, made from grapes grown and raised by said defendant, John Hubman, in Saline county, Arkansas; the said wine, so sold, was defendant's own make; that the sale was in the original package, and contained not less than five gallons in quantity; that, at the time of said sale, the sale of liquor was not licensed in Lonoke county; a majority of the votes at a previous election having voted against license in said county, the court could not issue license; that the sale of liquor is not prohibited in the place

where above sale was made, either by special act of the legislature, or by order of the county court."

The defendant asked the court to declare the law as follows: "(1) Any person who grows or raises grapes or berries may make wine thereof, and sell the same in quantities not less than five gallons anywhere in the state, except in localities where the sale is prohibited, either by special act of the legislature, or by an order of the county court, as provided in section 4877 of Sandels & Hill's Digest. (2) Any person who grows or raises grapes or berries may make wine thereof, and sell the same in quantities not less than one quart, anywhere in the state, where the sale of liquor is not prohibited by special act of the legislature or by the county court, under section 4877 of Sandels & Hill's Digest."

The court refused to declare the law as asked by defendant, and upon its own motion declared the law as follows: "Where a majority of the vote is against license in any county, it is unlawful for any person to sell wine in any quantity in such county."

Appellant was found guilty, and appeals to this court.

*Tom M. Mehaffy*, for appellant.

The proof in this case shows that defendant was the manufacturer of the wine sold, and he had the right to sell in original packages in quantities not less than five gallons. Sand. & H. Dig. sec. 4851; 60 Ark. 247; 37 *id.* 356. Section 4851 was not repealed by the wine act of April 3, 1889. All acts *in pari materia* should be construed and taken together. 3 Ark. 552; 40 *id.* 148. The act was passed to *encourage* the native wine industry. 37 Ark. 356; 60 Ark. 362. It would be an absurdity to suppose that the legislature intended to permit the sale of all other intoxicating liquors in original packages, and prohibit the sale of wine. See the

act as construed in 53 Ark. 490, and Sand. &. H. Dig. sec. 4853. This point was not settled in 60 Ark. 600. The intention of the act should be presumed, although such construction seems contrary to the letter. 3 Ark. 285.

*E. B. Kinsworthy*, Attorney General, for appellee.

1. In 53 Ark. 490, and 60 *id*. 600, this court held that wine made of grapes and berries grown by the maker of the wine can be sold in quantities not less than one quart *only when the sale of intoxicating liquors is licensed and authorized by law*.

2. Sec. 4852, Sand. & H. Dig., repeals all laws permitting the sale of native wine in this state, except as provided in sections 4853-4.

BATTLE, J. The sale of wine in this state without license is regulated by an act entitled "An act to regulate the sale of wine in the state of Arkansas," approved April 3, 1889, which, as enacted, is, in part, as follows :

"Section 1. That it shall be unlawful for *any person* to sell wine at *any place* in this state *except as authorized in this act*.

"Section 2. Any person who grows or raises grapes or berries may make wine thereof, and sell the same upon the premises where such grapes or berries are grown and the wine made, in quantities not less than one quart ; such person may also sell the wine of his own make in any place where the sale of intoxicating liquors is *licensed* and authorized by law, in quantities not less than one quart. *Provided*, This act shall not authorize the sale of wine in any district or locality where its sale is prohibited under special act of the general assembly.

"Section 3. Nothing in this act shall prevent regularly licensed liquor dealers from selling wine at the same places they are authorized to sell liquors."

Under this act any person who grows or raises grapes or berries, and makes wine thereof, is permitted to sell the same in any quantities not less than one quart, without license, upon the premises where the grapes or berries are grown and the wine made, and in any place where the sale of intoxicating liquors is *licensed and authorized by law.*

The constitutionality of the act was contested in *State* v. *Deschamp*, 53 Ark. 490. The indictment against Deschamp in that case, omitting caption, was as follows : "The grand jury of Scott county, in the name and by authority of the State of Arkansas, accuse Linc Deschamp of the crime of selling wine unlawfully, committed as follows, viz : The said Linc Deschamp on the 3d day of August, 1889, in the county of Scott aforesaid, unlawfully did sell one quart of wine, the said sale not being made upon the premises where the grapes and berries were grown and the wine made, and said sale not being made in any place where the sale of intoxicating liquors are [is] licensed and authorized by law, against the peace and dignity of the state of Arkansas." A demurrer to the indictment was filed and sustained, and the defendant was discharged.

The indictment was based upon the act of April 3, 1889. In passing upon its sufficiency, it became necessary to determine whether the act upon which it was based was constitutional. The court held that the effect of it was to allow any person growing or raising grapes or berries, and making wine thereof, to sell the same within the three-mile districts formed under section 4524 of Mansfield's Digest, if the premises upon which such grapes or berries were grown and the wine made were in such districts, and to prohibit the sale in the same districts of wine made of grapes or berries grown out of this state. This was the joint effect of the act and section 4524, which prohibited the sale of

wines, spirituous or intoxicating liquors by any one within such districts.

The result was, we found the act was unconstitutional, to the extent the joint effect of it and section 4524 was as stated, and eliminated so much of the act as produced this effect by striking out the words, "at any place," in the first section, and the words, "upon the premises where such grapes or berries are grown and the wine made," in the second section, and held the remainder of the act constitutional.

The judgment of the circuit court sustaining the demurrer to the indictment was affirmed by this court, but upon what grounds was not stated. But they are apparent. In the first place, the indictment was based on the second section of the act, and did not show that the wine sold was not made out of grapes or berries grown by the defendant, or, if it was, that the sale of intoxicating liquors were not licensed and authorized by law at the time and place it was sold. *Wilson* v. *State*, 35 Ark. 414, 416. In other words, it failed to show that he was affected by the second section; and, in the second place, did not allege that he sold the wine without license, and, therefore, was not entitled to the benefit of the third section of the act. *State* v. *Keith*, 37 Ark. 96.

<span style="float:left">Repeal of statutes relating to sale of wine.</span> In *Galloway* v. *State*, 60 Ark. 362, Chief Justice Bunn, in delivering the opinion of the court, said: "The case really turns upon the construction to be given to the act entitled, 'An act to regulate the sale of wine in the state of Arkansas,' approved April 3, 1889. * * * Certain words have been eliminated from the first and second sections of the act, to conform to the decisions of this court in the case of *State* v. *Deschamp*, 53 Ark. 490, the eliminated words having a reference solely to the place of sale, and therefore not affecting the issues in this case. The state contends that this act of 1889

*repeals, or takes the place of, all other acts on the special
subject of wine-selling in this state,* especially the 15th
section of the special act approved March 8, 1879, and
its contention seems to us to be well founded, notwith-
standing the repealing act contains no repealing clause."

In *Boldt* v. *State,* 60 Ark. 600, Mr. Justice Hughes,
in delivering the opinion of the court, said : "If the
act of April 3, 1889, had not been repealed, as above
shown [that is to say, so far as it relates to the sale of
wine in local option districts], still this case is settled
by the decision in *State* v. *Deschamp;* for the effect of
that decision is that wine made of grapes and berries
grown by the maker of the wine can be sold, in quanti-
ties not less than one quart, only where the sale of
intoxicating liquors is licensed and authorized by law."

The opinions in these three cases, it seems, ought to
decide the question as to the places in which a manufac-
turer can sell, without license, wine made from grapes or
berries grown by himself, and to restrict this right to
places where the sale of intoxicating liquors is licensed
and authorized by law. But it is contended that he has
the right to sell such wine "anywhere in this state,
except in localities where the sale of intoxicants is pro-
hibited, either by special act of the legislature or by the
three-mile law." This contention is based on section
4851 of Sandels & Hill's Digest, which reads as follows:
"It shall not be lawful for any person to sell alcohol or
any spirituous, ardent, vinous, malt·or fermented liquors
in this state, or any compound or preparation thereof,
commonly called tonics, bitters or medicated liquors, or
intoxicating spirits of any character which are used
and drank as a beverage in any quantity or for any
purpose whatever, without first procuring a license
from the county court of the county in which such sale
is to be made, authorizing such person to exercise such
privilege. *Provided,* manufacturers of alcohol, vinous,

ardent, malt or fermented liquors can sell in original packages without license. *Provided, further*, such original packages shall not contain less than five gallons." Under this statute, and section 4868 of the digest, it is said the manufacturers mentioned in section 4851 can sell in original packages containing not less than five gallons, without license, in any place in this state, except in local option districts, and localities where the sale of intoxicating liquors is prohibited by a special act of the legislature. How can this be true as to the manufacturers of wine? The act of April 3, 1889, was enacted subsequently to both the statutes named. The first section of it is explicit and comprehensive. As enacted it says : "It shall be unlawful for *any person* to sell wine at *any place* in this state except as authorized in this act." The persons who can sell without license are those who grow grapes or berries, and make wine thereof, and they were authorized to sell only in quantities not less than a quart, and upon the premises where the grapes or berries were grown and the wine made, and in places where the sale of intoxicating liquors is licensed and authorized by law. The act declares it shall be unlawful for them to sell wine without license, except in the quantities and at the places named. When amended to conform to the opinion of the court in *State v. Deschamp*, no change is made except to restrict the right to sell to places where "the sale of intoxicating liquors is *licensed* and authorized by law."

The word "licensed" has a well settled meaning : "Black on Intoxicating Liquors" says : "A license is essentially the granting of a special privilege to one or more persons, not enjoyed by citizens generally, or at least, not enjoyed by a class of citizens to which the license belongs. A common right is not the creature of a license law. In a general sense, a license is permission granted by some competent authority to do an act

which, without such permission would be illegal. The popular understanding of the word 'license' is undoubtedly a permission to do something which without the license would not be allowable. This is also the legal meaning. The object of a license is to confer a right which does not exist without a license. A license is a privilege granted by the state, usually on payment of a valuable consideration, though this is not essential. To constitute a privilege, the grant must confer authority to do something which, without the grant, would be illegal; for, if what is to be done under the license is open to every one without it, the grant would be merely idle and nugatory, conferring no privilege whatever. But the thing to be done may be something lawful in itself, and only prohibited for the purposes of the license; that is to say, prohibited in order to compel the taking out of a license. From these definitions, which are among the best to be found in the books, it will be apparent that three leading ideas are involved in the definition of a license under the liquor laws. First, it confers a special privilege or franchise, upon selected persons, to pursue a calling not open to all. Second, it legalizes acts which, if done without its protection, would be offenses against the state. Third, it is a privilege granted as part of a system of police regulations, and herein is distinguishable from taxation." Sec. 117.

As used in the liquor laws of this state, a license is *As to right to sell wine.* a privilege granted by the county court, or other competent authority, to sell liquor. In this sense it was doubtless used in the act of April 3. Construed in this sense, in the connection it is used in the act, the manufacturer cannot sell wine made out of grapes or berries grown by himself, without license, under the act regulating the sale of wine in this state, except in places

where the county court, or other competent authority, can, in conformity with "the statutes in such cases made and provided," grant the privilege of selling intoxicating liquors.

But it is said that it has been the policy of the legislature to encourage the manufacture of native wine, and that "it would be absurd to suppose that the legislature intended to permit the sale of all other intoxicating liquors in original packages, and prohibit the sale of wine." While the supposition may be absurd, the truth is it has not been done. The manufacturer of native wine can sell in quantities of not less than one quart. The legislature probably thought it was favoring him when it authorized him to sell in such quantities when other manufacturers were prohibited from selling their liquors, without license, except in original packages containing not less than five gallons.

The language of the act of April 3d is plain and unambiguous. We cannot give it a meaning different from that it clearly conveys, to subserve some particular policy. As said by Mr. Justice Hughes in *Railway Co.* v. *B'Shears*, 59 Ark. 244, "it might be very just and reasonable and right that the statute should make an exception, such as is contended it does make, or ought to be construed to make, but this was within the power of the legislature, and its exercise of the power cannot be restrained or varied by the courts to subserve convenience, to relieve from hardships or from requirements that seem unreasonable, or even absurd, when the language is plain and unambiguous."

Our conclusion is, the manufacturer cannot lawfully sell wine made out of grapes or berries grown by himself, without license, except in places where the sale of intoxicating liquors can be licensed according to law.

This opinion, of course, has no reference or application to special acts of the legislature governing the sale of wine in particular localities.

Judgment affirmed.

BUNN, C. J., and WOOD, J., concur.

HUGHES, J., (dissenting). I am unable to yield my assent to the opinion just delivered by Mr. Justice BATTLE in this case, for the following reasons: It is conceded, and cannot be denied, that the act of March 8th, 1879 (Sec. 4851 of Sandels & Hill's Digest), provides that manufacturers of alcohol, vinous, malt or fermented liquors can sell the same in original packages without license, provided such original packages do not contain less than five gallons. So far as the sale of all such liquors as alcohol, ardent, malt or fermented liquors are concerned, this act is still in force, and they may be sold in original packages of five gallons without license. It cannot be reasonably supposed that the legislature would allow the sale of alcohol, whisky, and brandy in original packages of five gallons without license, and require that manufacturers of wine should pay a license tax before they can sell. Though there may be dicta to the contrary, I am of the opinion that, when the acts of the legislature governing the sale of liquors and wines in this state are construed together, as they should be, it will be found that the act above referred to was not intended to be, and was not, repealed, so far as the sale of wine is concerned. Different statutes upon the same subject must be construed *in pari materia.* The repeal of statutes by implication is not favored.

In *Bowen* v. *Lease*, 5 Hill (N. Y.), 221, it is held that "where two statutes are passed, inconsistent with and repugnant to each other, the one last enacted will operate as a repeal of the other by implication. Other-

wise, if they be not plainly repugnant, unless in the one last enacted some notice is taken of the other indicating an intent to repeal it; for the law does not favor the repeal of statutes by implication.''

In *Chesapeake & O. Canal Co.* v. *Railroad Co.* 4 Gill & Johnson, (Md.) 1, it is said : ''Statutes should be construed with a view to the original intent and meaning of the makers, and such construction should be put upon them as best to answer that intention, which may be collected from the cause or necessity of making the act, or from foreign circumstances; and, when discovered, ought to be followed, although such construction may seem to be contrary to the letter of the statute. That, therefore, which is in the letter of the statute, is sometimes not within the statute, not being within the intention of the makers.'' ''If laws and statutes seem contrary to one another, yet, if, by interpretation, they may stand together, they shall stand ;'' and where two laws so far disagree, or differ, as that, by any other construction, they may both stand together, the rule, ''*Leges posteriores priores contrarias abrogant*,'' does not apply, and the latter is no repeal of the former. It is laid down as an established rule, in 19 Vin. Abr. 525, Pl. 132, that ''repeals by implication are things disfavored by law, and never allowed of, but when the inconsistency and repugnancy are plain and unavoidable, for these repeals carry along with them a tacit reflection upon the legislators, that they should ignorantly, and without knowing it, make one act repugnant to and inconsistent with another ; and such repeals have ever been interpreted to repeal as little of the preceding law as is possible,'' etc.

In *Brown* v. *County Commissioners*, 21 Pa. St. 42, 43, the rule is laid down thus : ''When two statutes are so flatly repugnant that both cannot be executed,

and we are obliged to choose between them, the later is always deemed a repeal of the earlier. * * * * * But whenever two acts can be made to stand together, it is the duty of a judge to give both of them full effect. Even where they are seemingly repugnant, they must, if possible, have such a construction that one may not be a repeal of the other, unless the latter one contains negative words, or the intention to repeal is made manifest by some intelligible form of expression. That the law does not favor repeals by implication is a very old rule."

It is manifest that the policy of our legislation has been, and is, to encourage the growth of grapes, and the manufacture of wine therefrom. It is preposterous and inconsistent to suppose that the general assembly have discriminated against wine, and encouraged the manufacture and sale of ardent spirits. Of the two, it is the consensus of opinion that the manufacture and sale of ardent spirits is a much greater evil than the manufacture and sale of wine. I am of the opinion that the laws of this state allows the sale of wine in original packages of five gallons without license.

In no former case in this court has the question of the right to sell wine in five-gallon original packages, without license, been considered, and the opinions heretofore delivered do not cover, or conclude the court upon, this question.

RIDDICK, J., concurs in the dissent.