McClure v. Topf & Wright.

Opinion delivered April 6, 1914.

1. CONSTITUTIONAL LAW—LEGISLATIVE ACT—PRESUMPTION AS TO VALIDITY.—The Legislature may pass any law that is not expressly, nor by necessary implication, prohibited by the Constitution, and where an act is assailed as being unconstitutional, it must be shown to be plainly at variance with the Constitution, before the court will so declare it. (Page 346.)

2. CONSTITUTIONAL LAW—LIQUOR—REGULATION—POLICE POWER.—Act No. 59, Acts 1913, making it unlawful to issue a license or permit to any person to sell or give away intoxicating liquors, except when a majority of the adult white inhabitants of a town or city have signed a petition to the county court within which the town or city is situated asking that licenses be issued for that town or city, and provided the county voted "for license" at the last general election, is not in conflict with the Fourteenth Amendment to the Constitution of the United States, as the right to engage in selling intoxicating liquors is not one of the privileges or immunities given to citizens of the United States which the States are forbidden to abridge, and as the regulation of the liquor traffic is wholly within the control of the State through the exercise of its police power, even to the extent of total prohibition. (Page 346.)

3. CONSTITUTIONAL LAW—REGULATION OF LIQUOR TRAFFIC—PETITION.— Act 59, of the Acts of 1913, regulating the granting of licenses to sell liquor in cities and towns, which limits signers of the petition for license to the white adult inhabitants, does not provide for an

election, and does not violate the Fifteenth Amendment to the
Federal Constitution, which prohibits any abridgment of the
rights of citizens of the United States to vote, on account of race,
color, or previous condition of servitude. (Page 351.)

4.  CONSTITUTIONAL LAW—REGULATION OF LIQUOR TRAFFIC—PETITION—
    ABRIDGMENT OF RIGHTS OF CITIZENS.—Act 59, Acts 1913, regulating
    the granting of licenses for the sale of liquor, is not in violation
    of art. 2, § 18, of the Constitution of 1874, which section prohibits
    the granting to any citizen or class of citizens, privileges or im-
    munities that shall not belong to all citizens upon the same terms,
    since the act does not confer a privilege upon the adult white
    inhabitants of a city or town, but merely imposes a condition upon
    the traffic in intoxicating liquors. (Page 352.)

5.  LIQUORS—TRAFFIC—REGULATION.—Regulation of the liquor business
    by the State, will be sustained although such regulation amounts
    to practical prohibition of the business, on account of the ill effects
    of liquor upon the health, morals and welfare of the people gen-
    erally. (Page 353.)

Appeal from Pulaski Circuit Court, Third Division;
*G. W. Hendricks,* Judge; reversed.

*Isgrig & Cannon,* for appellant.

1. The act is not unconstitutional. It does not vio-
late art. 2, § 3, Constitution, nor § 18, art. 2,
of this State, nor the Fourteenth Amendment to
the Constitution of the United States. The act is solely
a police regulation, and States have the right to regulate,
control or entirely suppress the liquor traffic. The sale
of liquor is not a privilege nor immunity within the Con-
stitution. 39 Ark. 353; 27 Vt. 140; 43 *Id.* 42; 69 *Id.* 525;
33 *Id.* 443; 148 Fed. 513; 16 Wall. 36; 97 U. S. 659; 177
*Id.* 595; 85 Cal. 208; 118 U. S. 356; 137 *Id.* 86; 187 U. S.
606; 254 Ill. 624; 101 Va. 323; 148 U. S. 657; 152 *Id.* 133;
26 Fed. 196; 72 Ark. 171; 167 U. S. 43; 177 *Id.* 183. The
courts universally recognize cases which are not harm-
ful or dangerous, and distinguish them from those uni-
versally recognized to be dangerous to the public health,
safety or morality of the community. The former are
privileges; the latter are not. Cases *supra.*

*Morris M. & Louis M. Cohn,* for appellees.

1. The act discriminates against races, which is in
violation of the Constitution. The petition is in the na-

ture of an election.   51 Ark. 164; 70 *Id.* 175; 77 *Id.* 154; 81 *Id.* 208.

2.   The act violates the Fourteenth and Fifteenth Amendments to the Constitution of the United States, and art. 2, § § 3 and 18, of the Constitution of Arkansas.   16 Wall. 36-81; 92 U. S. 542, 555-6; 110 *Id.* 664; 206 N. Y. 231; 182 Fed. 223; 207 Mass. 601; 121 Fed. 250; 61 L. R. A. 437; 55 Ala. 468; 48 Cal. '36; 23 Fed. 634; 72 *Id.* 689; 83 Ky. 49; 94 N. C. 800; 67 Fed. 829.

3.   No discrimination can be made 'between whites and negroes; all are entitled to the equal protection of the laws.   The petition for liquor is a privilege.   26 Ark. 523; 27 *Id.* 625; 43 *Id.* 42; 43 *Id.* 53; 161 S. W. 154; 129 Cal. 337; 54 L. R. A. 771; 57 *Id.* 115; 188 Ill. 176; 52 L. R. A. 283; 20 Am. St. 176; 83 N. E. 215; 158 Fed. 5, 9, 10, 11; 231 Ill. 302.

4.   The Fourteenth Amendment is compulsory upon the States.   16 Wall. 36; 143 U. S. 135; 118 *Id.* 368; 195 U. S. 223.

*J. W. & J. W. House, Jr.,* for appellees.

1.   The act is unconstitutional.   Const. Ark., art. 2, § § 3, 18; Fourteenth Amendment Const. of U. S.   It discriminates between classes, denying privileges to one class of persons.   54 (U. S.) Fed. 338; 50 Tenn. 287; 38 N. W. 95; 38 Minn. 366; 33 Am. Dec. 633; 41 Pac. 635; 3 Okla. 677.

2.   Petitions of this character are held to be in the nature of an election.   51 Ark. 159; 73 *Id.* 421; 75 *Id.* 158; 70 *Id.* 175.   The act is a clear discrimination against the negro, and is void.   43 Ark. 42; 161 S. W. 154; 75 Ark. 542; 37 *Id.* 362; 53 *Id.* 490; 148 Pa. St. 482; 120 U. S. 488; 184 *Id.* 540; 50 So. 493; 41 Atl. 126; 73 S. E. 154; 103 U. S. 370; 107 *Id.* 110-199; 110 *Id.* 651; 146 *Id.* 1; 100 *Id.* 313; 170 *Id.* 213.

3.   Although the act is intended to be a mere police regulation, the discrimination as between whites and blacks can not be made.   113 U. S. 32; 118 *Id.* 356; 100 U. S. 303.

*H. C. Mechem, amicus curiae.*

Only a person injured or discriminated against can raise the question of the unconstitutionality of a statute. None signing the petition are negroes. 20 S. W. 285; 4 *Id.* 316; 80 Ga. 775; 79 Ky. 22; 54 Miss. 592; 22 Gratt. 833; 47 Oh. St. 478; 30 Pac. 293; 72 N. Y. 911; 88 Pa. St. 42.

*N. B. Scott, amicus curiae.*

If the exclusion of negroes be unconstitutional, the balance of the act is constitutional. The void part may be excluded and the act held constitutional. 192 U. S. 418; 24 Sup. Ct. Rep. 383, 48 Law Ed. 504; 93 Ark. 612; 89 Ark. 466; 53 *Id.* 490; 37 *Id.* 356. ·

HART, J. The only issue sought to be raised by this appeal is as to the constitutionality of Act No. 59 of the last (1913) General Assembly, entitled "An Act to regulate the issuance of liquor license in Arkansas."

Other questions might be discussed and determined, but, as said by the court in considering the local option act of 1881 in the case of *Trammell* v. *Bradley, County Judge,* 37 Ark. 374, "in view of the grave public interests involved in the question, the court consents" to waive every point except that of determining the constitutionality of the act, and we proceed at once to a consideration and decision of that question.

So much of the act as is necessary for a determination of the issue raised by the appeal is as follows:

"Section 1. It shall be unlawful for any court, town or city council, or any officer thereof, to issue a license or permit, or any other authority to any corporation, person or persons, to sell, barter, or give away, any alcoholic, malt, vinous or spirituous liquors, or any compound or preparation thereof, commonly called tonics, bitters or medicated liquors, within the State of Arkansas, except as provided in this act.

"Section 2. When a majority of the adult white inhabitants living within the incorporated limits of any incorporated town or city in this State shall have signed a petition to the county court of the county in which said

town or city is situated, asking that license for the sale of intoxicating liquors be issued for that town or city, then the said county court may issue such license for a period already provided by law.

"*Provided,* that the majority of the votes cast at the last general election in that county on the question of 'For License' and 'Against License' was in favor of 'For License.' "

It is not to be doubted that the Legislature has the power to make the written laws of the State unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so declare it.

In regard to the objection that the act in question is in conflict with the Fourteenth Amendment to the Constitution of the United States, it may be said that it has uniformly been held by the Supreme Court of the United States that the right to engage in selling intoxicating liquors is not one of the privileges or immunities of citizens of the United States, which the States are forbidden to abridge by the Fourteenth Amendment to the Constitution. *Bartemeyer* v. *Iowa,* 18 Wall. (U. S.) 129; *Mugler* v. *Kansas,* 123 U. S. 623; *Crowley* v. *Christensen,* 137 U. S. 86; *Giozza* v. *Tiernan,* 148 U. S. 657.

The courts generally treat the liquor traffic as being wholly within the control of the State through the exercise of its police power, and its sale may be regulated or restricted as the State sees fit, even to the extent of total prohibition. 23 Cyc. 81; 17 Am. & Eng. Enc. of Law, 211, 212.

In *Crowley* v. *Christensen, supra,* the Supreme Court of the United States, through Mr. Justice Field, said:

"The sale of such liquors in this way has theretofore been at all times by the courts of every State considered as the proper subject of legislative regulation. * * * It is a question of public expediency and public morality and not of Federal law. The police power of

the State is fully competent to regulate the business, to
mitigate its evils, and to suppress it entirely.   There is
no inherent right of a citizen to thus sell intoxicating
liquors by retail; it is not a privilege of a citizen of a
State or of a citizen of the United States. * * * The man-
ner and extent of regulation rest in the governing au-
thority. * * * It is a matter of legislative will only.   As
in many other cases, the officers may not always exer-
cise the power conferred upon them with wisdom or
justice to the parties affected.   But this is a matter
which does not affect the authority of the State, nor is
it one which can be brought under the cognizance of the
courts of the United States.''

Again, in the case of *Giozza* v. *Tiernan, supra,* Mr.
Chief Justice Fuller, speaking for the court, said:

''But it is contended that the act conflicts with the
provisions of the Fourteenth Amendment that 'no State
shall make or enforce any law which shall abridge the
privileges or immunities of citizens of the United States,
nor shall any State deprive any person of life, liberty
or property without due process of law, nor deny to any
person within its jurisdiction the equal protection of the
laws.'   The privileges and immunities of citizens of the
United States are privileges and immunities arising out
of the nature and essential character of the National
Government, and granted or secured by the Constitution
of the United States, and the right to sell intoxicating
liquors is not one of the rights growing out of such citi-
zenship.   *Bartmeyer* v. *Iowa,* 18 Wall. (U. S.) 129.   The
amendment (Fourteenth) does not take from the States
their powers of police that were reserved at the time the
original Constitution was adopted.   Undoubtedly it for-
bids any arbitrary deprivation of life, liberty or prop-
erty and secures equal protection to all under like cir-
cumstances in the enjoyment of their rights, but it was
not designed to interfere with the power of the State
to protect the lives, liberty or property of its citizens,
and to promote their health, morals, education and good
order.''

The same principles have been reaffirmed by later decisions of the Supreme Court of the United States. See *Eberle & Carroll* v. *The People of the State of Michigan,* 232 U. S. 700, opinion by Mr. Justice Lamar, delivered March 23, 1914.

Counsel for appellees rely upon the case of *Yick Wo* v. *Hopkins,* 118 U. S. 356, relating to the regulation of laundries. The court held the ordinance in that case void because the Chinese were arbitrarily forbidden to operate a laundry, a business harmless in itself, and in which on that account an alien had a right to engage on the same terms as citizens of the State for the purpose of earning a living. In that case, the distinction made clear in the subsequent case of *Crowley* v. *Christensen, supra,* was not discussed. That is to say, in the latter case it was pointed out that in the application of the police power of a State, there is an essential difference between the business of selling liquor and other businesses which are harmless in themselves. This distinction has also been recognized by State courts which have sustained the validity of statutes limiting the granting of liquor license to residents of the State. *DeGrazier* v. *Stephens,* 101 Tex. 194, 16 Am. & Eng. Ann. Cas. 1059; *Austin* v. *State,* 10 Mo. 591; *Welsh* v. *State,* 126 Ind. 71, 9 L. R. A. 664.

In *Mette* v. *McGuckin,* 18 Neb. 323, 25 N. W. 338, a statute which limited the granting of liquor licenses to residents of the State was attacked on the ground that it was in violation of the Fourteenth Amendment to the Constitution of the United States, and the court held that the act was a proper exercise of the police power of the State and was valid. The case was affirmed by the Supreme Court of the United States without a written opinion. *Mette* v. *McGuckin,* 149 U. S. 781; 23 Cyc. 122.

The Fifteenth Amendment to the Constitution of the United States declares that "the right of citizens of the United States to vote shall not be abridged by the United States or by any State on account of race, color or pre-

vious condition of servitude." The evident purpose and object of the Fifteenth Amendment is to secure the right of citizens to vote in the elections contemplated by the Fourteenth Amendment. For the reasons hereinafter given, statutory proceedings to obtain license for the sale of intoxicating liquors, such as the one under consideration, are not elections, and are not, therefore, in conflict with the Fifteenth Amendment.

But the principal reliance of counsel for appellees to uphold the judgment of the circuit court is that the act in question is in violation of article 2, section 18, of our Constitution, which reads as follows:

"The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

They insist that the proceeding required by the act as a prerequisite to the granting of license by the county court is an election, and that to deny colored people the right to vote would be a violation of that clause of our Constitution just quoted.

Of course, if the position assumed by counsel is correct, the act contravenes our Constitution, because the right to vote is a privilege from which a person can not be excluded on account of color. To support their position, counsel cite the case of *McCullough* v. *Blackwell*, 51 Ark. 159, and quote therefrom as follows:

"The presentation of the petition is in the nature of an election. When the county court has acted, the votes have been cast and the election returns made, and an appeal does not invest the petitioner with power to change his vote or to withdraw it except for good cause, as is indicated in *Williams* v. *Citizens* (40 Ark. 290)."

It is plain that the court did not mean to hold that the procuring of signers to the petition and the presentation thereof to the county court was an election; for the law, as it then existed, permitted adult females, as well as adult males, to sign a petition praying that the sale of intoxicating liquors be prohibited by the court. The

court had already held the act constitutional. See *Blackwell* v. *State*, 36 Ark. 178; *Wilson* v. *State*, 35 Ark. 414; *Trammell* v. *Bradley, County Judge*, 37 Ark. 374. If such a proceeding was an election, the court could not have held the act constitutional; for under our Constitution only male persons over the age of twenty-one years, with certain other qualifications as to residence, are allowed to vote. The court only said that the proceeding was conducted in like manner as an election, but that is a very different thing from saying that it is an election. This is shown by the language of the court in *Bordwell* v. *Dills*, 70 Ark. 175, where, in reference to the language quoted above in *McCullough* v. *Blackwell*, 51 Ark. 159, the court said:

"Treating the proceedings as analogous to that of an election, as is done in *McCullough* v. *Blackwell, supra,* the ballots are cast when the petition containing the signatures is filed with the clerk of the county court. Continuing the analogy, when the county court begins the investigation to determine the result, the polls are cleared, and the count of ballots has begun, and when the order is entered, the returns are made."

To say that a proceeding is analogous to or like an election is quite a different thing from saying that it is an election. Moreover, such a holding would be contrary to the general trend of authority in the several States.

Mr. Black, the author of the subject of Intoxicating Liquors, in 23 Cyc., at page 81, said:

"A statutory provision that a license shall not be granted unless the applicant obtains the recommendation or consent of a certain number of persons residing in his neighborhood, or of a majority or other proportion of the citizens of the ward or district where he proposes to carry on business, is a lawful and proper police regulation, and is not objectionable on constitutional grounds." 23 Cyc. 81. See, also, 17 Am. & Eng. Enc. of Law (2 ed.), 211, 212.

Again, at page 128, the learned author said that the signers to such a recommendation must be such as the

statute requires, whether adults, freeholders, taxpayers, citizens, residents of the district, heads of families, or otherwise, according to the terms of the law. The same author states (and the decisions of this and other States generally hold) that the licensing authorities have no power to issue a license unless the statutory requirements are complied with. If proceedings to obtain licenses under local option statutes are to be regarded as elections, it is manifest that only legal voters could participate therein, and that statutory requirements that the applicants' petition should be endorsed or accompanied by a recommendation of a majority of adult inhabitants, including females as well as males, taxpayers, heads of families, property owners, etc., would all be invalid. The courts of the various States have uniformly upheld those statutes on the ground that there being no inherent right in a citizen to sell intoxicating liquors, the business may be wholly prohibited or it may be permitted under such conditions as the Legislature may prescribe. That is to say, under the statute under consideration, the petition is the jurisdictional condition upon which the court acts when satisfied that it contains the names of a majority of the white adult inhabitants in the city in which the applicant seeks a license to sell intoxicating liquors. This seems to have been the view taken by this court in its previous decisions.

In the case of *Trammell* v. *Bradley, County Judge, supra,* the court said:

"The mode of information prescribed for townships is by vote of electors at a general election. We understand that no objection is made to that. With regard to institutions of learning, the court derives its information from the expressed wishes of a majority of the adult inhabitants residing within three miles. If the petitioners made the law for the district, or were required to express their views and feelings at the regular legal polls, it would be fatal that females and others, not qualified electors, might participate. But considered simply as a condition upon which the county court must decline to

issue license, and as a prescribed means of information, the provision for the voice of women is neither unreasonable nor unconstitutional. They are not beings wholly ignored by the Constitution and the laws, and there is much reason to believe that their womanly instincts and keen foresight of demoralizing influences are truer than the often careless judgment of electors. It is undoubted everywhere that men and children are safest under the moral influences and social surroundings which are approved by women.''

Counsel for appellees rely upon the case of *Leon Levy, ex parte,* 43 Ark. 42, as conclusively sustaining their position that the act under consideration denies to adults of the colored race privileges and immunities that are granted to adult white inhabitants, and is therefore violative of the clause of our Constitution above quoted. The language of a decision must be read with reference to the facts before the court and the principles of law which they present for consideration and determination. Levy had applied to the county court for license to retail liquors in the city of Pine Bluff and had fully complied with all the requirements of the law in that regard. At the last preceding general election, a majority of the votes of the county and of each ward in Pine Bluff had voted in favor of liquor license. The county court granted the license to other applicants, but arbitrarily refused to grant license to Levy. The court held that while the court might have refused him license for good cause, it could not adopt the policy of granting license to others and arbitrarily refuse him, for such action would deny him a privilege given to others and would be in violation of section 18, article 2, of our Constitution, which provides that the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens. In the act under consideration, members of the colored race are not excluded from engaging in the business of selling intoxicating liquors upon the same terms as members of the white race. The act under con-

sideration provides that the county court may issue license when a majority of the adult white inhabitants of any incorporated town or city shall have signed and presented a petition asking that license be issued, provided that a majority of the votes cast at the last general election were "For License." It will be noted that the county court is not required even then to grant license, but it may do so if the conditions prescribed by the statute are complied with. As we have already seen, statutes requiring that license should only be issued on the recommendation of property holders, taxpayers and heads of families, etc., have been sustained. If the position assumed by counsel for appellees is correct, such statutes would be open to the objection that the class of signers which are designated are given privileges and immunities which are not granted other citizens. The law-makers are presumed to be familiar with moral conditions as they exist in this State, and to know what class of citizens could best give proper information as to the evils that might result from the liquor traffic. The law-makers doubtless thought that the class designated in the statute knew best whether the granting of license to sell intoxicating liquors would be dangerous to the morals of the community and likely to result in injury. Such action on the part of the Legislature did not give the persons designated in the statute a privilege, but only imposed a condition upon the traffic in intoxicating liquors.

We are of the opinion that it is well settled by the courts of the country that statutes imposing conditions on the business of retailing intoxicating liquors, though such conditions may be more onerous than those imposed upon another business, and though such conditions may be so burdensome as to render the business unprofitable and on that account amount, in its practical results, to prohibition, may be sustained because the business of selling intoxicating liquors more seriously affects the health, morals and general welfare of the people than another business. Therefore, we are of the opinion that the act under consideration is not unconstitutional, but is a valid

exercise of the legislative power. It follows that the judgment of the circuit court must be reversed and the cause will be remanded for further proceedings according to law.

KIRBY, J., not participating.