BURT *v.* ROAD IMPROVEMENT DISTRICT No. 11.

Opinion delivered June 4, 1923.

1.  HIGHWAYS—ROAD IMPROVEMENT DISTRICT—POWERS.—Road improvement districts created under Acts 1915, c. 81 (Crawford & Moses' Digest, §§ 5399-5462) are *quasi* governmental agencies of special and limited powers which may be exercised in such manner as is authorized expressly or by necessary implication.

2.  HIGHWAYS—IMPROVEMENT DISTRICT—CONTRACTOR'S BOND.— Crawford & Moses' Dig., § 5446, requiring a road improvement contractor to give a bond for the faithful performance of his contract and for the prompt payment of all persons furnishing him labor or materials in the prosecution if the work is mandatory, and a compliance therewith is a condition precedent to the validity of any contract between the district and the contractor for the building of roads which the district undertakes.

3.  HIGHWAYS—CONTRACTOR FAILING TO EXECUTE BOND.—Though a road improvement contractor failed to execute the bond required by Crawford & Moses' Dig., § 5446, he was entitled, on a *quantum meruit* basis, to recover for work done for which the district received the benefit; but where a considerable portion of the roadway washed away before the district was able to complete the improvement, he was not entitled to recover for the work that had washed away.

4.  HIGHWAYS—VALIDITY OF CONTRACT.—A road contractor, in order to enable the district to get the money on its bonds, so that he could go on with the work, executed his note for $6,200 to the bond purchaser, by whom the note was subsequently transferred to the district. This district agreed to permit the contractor to increase his bid for the work by the amount of such note. *Held* that the note was binding, though the contractor subsequently abandoned the work, and therefore never received the additional pay.

5.  HIGHWAYS—RIGHT OF SUBCONTRACTOR TO RECOVER.—Where a subcontractor did work on a road improvement for which the improvement district received the benefit, he was entitled to recover from the district on a *quantum meruit* basis for the value of the work.

6.  JUDGMENT—JOINT JUDGMENT—SATISFACTION.—Where a sub-contractor recovered a joint judgment against his principal and the road improvement district for the value of work done by him, he is entitled to one satisfaction only.

Appeal from Prairie Chancery Court, Southern District; *John M. Elliott,* Chancellor; reversed.

*Hughes & Hughes,* for appellant.

The contract with the district was valid without the giving of the bond in advance of the time of beginning work. Secs. 5399 to 5462, Crawford & Moses' Digest. By allowing Burt to continue the work under the contract, urging his doing so, without the bond being given, his default in not making it cannot afterwards be treated as a total breach thereof. 102 Ark. 79. The contract was not terminated because of Burt's failure to give the bond. The district's failure to pay the installments as they became due for work done constituted a breach of the contract, and, being in default itself, it could not insist on performance by Burt as a condition precedent to payment. 88 Ark. 497. Any failure of making progress with the work arose from Burt's not being paid for work done in accordance with the terms of the contract. Even if the compensation of Burt must be fixed on basis of *quantum meruit,* he is entitled to recover what the work was reasonably worth when it was done. The contract was kept alive in fact, and he should be paid according to its terms. The three notes of Burt should be surrendered and canceled. He agreed to stand that much loss in order that par could be paid for the bonds and in consideration that he should do the work. The plan failed, the man to whom he gave the notes, who transferred them to the district, could not handle the bonds, which were finally sold to another, and the work was taken away from Burt, and, if ever there was a consideration for the notes, it certainly failed. After Burt was deprived of the contract, he should not be held liable for deterioration of work done. The district had taken it over. Under the terms of the contract the district could take over the work, and could only deduct the cost of completing it from the sum which would otherwise have been payable to the contractor, had he finished it.

*Emmet Vaughan,* for appellant W. T. Burks.

Burks, appellant, was a subcontractor for Burt, and the district owes him in any event for the work done under the supervision of its engineer and accepted by it. He also is entitled to recover from the district under § 5448, C. & M. Digest, the principal contractor having failed to pay him. If the commissioners knew the district was not liable to the contractor, Burt, because of his failure to file bond, then by allowing appellant, subcontractor, to proceed with the work under direction of its engineer, it became liable to payment for work done. 19 Ark. 671; 26 Ark. 360; 72 Ark. 354, 80 S. W. 749; 2 Ark. 370; 124 Ga. 61; 38 Ill. 266; 82 Ill. 259; 18 B. Man. (Ky.) 41; 17 N. Y. 499; 16 Pa. Super. Ct. 484; 61 Atl. (Vt.) 471; 127 N. Y. 575.

*Cooper Thweatt,* for appellee district.

The contract between Burt and the district was void because the bond required by the statute was not given. Sec. 5446, C. & M. Digest; *Carswell* v. *Hammock,* 127 Ark. 119; 2 Dillon on Municipal Corporations, 1263; 28 Cyc. 1040; *Baker* v. *Southern,* 47 S. W. (Ky.) 608; *Bowditch* v. *Superintendent,* 46 N. E. 1026. Acts of public agents not binding on agency represented unless done in manner required by law. 19 R. C. L. 1063; 28 Cyc. 1043; 152 Ark. 507; 147 Ark. 267; 79 Ark. 234; 94 Ark. 381; 61 Ark. 79; 9 C. J. 730. The court erred in allowing Burt credit on a *quantum meruit* for the work done. 19 R. C. L. 1064; 28 Cyc. 1043; 124 Ark. 11; 146 Ark. 63. District is entitled to recover payment made to Burt. 117 Ark. 336; 114 Ark. 289. Even conceding that the bond could be waived, which it could not be, of course, it was only a waiver of one of the several breaches of the contract. Burt abandoned the work, and the district rescinded the contract, and the question of waiver is really unimportant. The commissioners often demanded that the bond be made, but it was never done. Burt was not making any substantial progress with the

work, and finally abandoned it. Was in no position, being in default, to claim the district had breached the contract by failing to make a payment on August 10. 93 Ark. 453; 142 Ark. 434; 61 L. R. A. 407. Payment of Aug. 10 did not become due because Burt had failed to pay subcontractor. The contract provides for building a completed road, and Burt, having abandoned the work, without fault on the part of the district, forfeited all rights thereunder, could not recover for work done, nor retain the payments received. 236 U. S. 512; 79 Ark. 506; 166 S. W. 556; 102 Ark. 152; 137 Ark. 375; 6 R. C. L. 974; 9 C. J. 819; 38 Ark. 103; 87 Ark. 328. The district did not accept but rather retained benefit of work performed. 64 Ark. 34. The district had the right to retain the certified check, under the terms of the contract, as liquidated damages. 2 Dillon, Municipal Corporations, 1222; 28 Cyc. 1032; 30 So. 694. Under facts of this case the district cannot be compelled to pay Burt the saving made in the completion of the contract after he had abandoned the work. 236 U. S. 512, 35 S. C. 298; 120 Ark. 435; 124 S. W. 900; 83 N. E. 997.

WOOD, J. On the 10th day of April, 1920, one J. A. Burt (hereafter called appellant) entered into a contract with Road Improvement District No. 11 (hereafter called district) to construct a road for the district. He was to complete the work within two hundred working days. The appellant deposited a certified check in the sum of $5,000 to guarantee the execution of the contract. The commissioners of the district refused to award the appellant the contract unless the bonds of the district could be sold for par. Appellant procured one H. C. Argo, president of the First National Bank of Cotton Plant, Arkansas, to make a contract with the district to buy the bonds at par. Appellant gave Argo his notes in the sum of $6,200 as a consideration therefor. Argo transferred the notes to the district as part payment of the purchase price of the bonds. Appellant began work on April 26 by putting a crew to moving

fences and telephone poles and by employing one W. T. Burks as a subcontractor to grade part of the road.

Appellant failed to make bond. The appellant was paid for the work done in May and June, amounting to the sum of $7,177.40. Appellant paid W. T. Burks for the work done by him in May, but failed to pay him for his work in June. The district refused to pay appellant for the work done in July, due August 10, because of his alleged failure to give bond and to pay his subcontractor, but told him it would pay him if he would give the bond, pay his men, and proceed to expedite the work. On August 23 the district employed other contractors to assist appellant, by grading the road through the bottom lands. Burks performed his subcontract and completed the same about August 30. There was due him for his work the sum of $10,445.73. On September 27th the district cashed the $5,000 certified check of the appellant and paid same to Burks, leaving a balance due of $5,445.73. On October 27th the appellant made an assignment of all his property in this State for the benefit of his creditors.

This action was begun by Burks against the appellant and the district and its commissioners. He set up the contract between the appellant and the district, and alleged that he had a subcontract under appellant; that he performed work according to his contract, and that there was due him the balance of $5,445.73. He made the trustees of appellant in the assignment parties, and also the People's Bank of DeVall's Bluff, the depository of the district, and sought to impound the funds in its hands for the payment of his claim.

The appellant and the trustees in the assignment answered and alleged that Burks had been paid all sums of money due him directly by the district. They made their answer a cross-complaint against the district, setting up the contract of the district with the appellant, and alleged that he did all the work of clearing the right-of-way, which amounted to the sum of $5,000; that the

district had never paid; that he had sublet the excavation work to Burks; that the district had breached the contract in letting out work to others; and that, but for such breach, appellant would have been able to complete the work at a large profit. They alleged that appellant had deposited a certified check with the district for $5,000, which the district had cashed, and they prayed that an accounting be had, and that they be given a decree for the amount due the appellant.

The district answered the cross-complaint, denying that it had violated the contract with appellant, and denying that it was indebted to him in any amount, and alleged that the appellant had failed to give bond, and had abandoned the contract; that he was indebted to the district in the sum of $6,200 on notes given by him to Argo, which had been transferred to the district, for which it asked judgment, or that these notes be set-off against any amount that might be found due the appellant. It also made its answer a cross-complaint against Burks, and alleged that the appellant had refused to give bond, and had abandoned his contract; that, under a provision of the contract with the appellant, the district might pay any subcontractor for the work performed by such subcontractor out of any money due the contractor, and that, under such provision of the contract, the district had paid to Burks the sum of $5,000; that at that time nothing was due from the district to the appellant, and that the payment of $5,000 to Burks was therefore contrary to the contract, and illegal. The district therefore prayed judgment against Burks in the sum of $5,000.

Burks answered the cross-complaint of the district, and set up that, after the controversy arose between the appellant and the district, the commissioners and its engineer had Burks to continue the work of the district, and that the $5,000 for which the district asked judgment against him was paid him for construction work which he performed for the district under supervision

of its engineer, after the controversy arose between the appellant and the district. Burks also, in an amendment to his complaint, asked that a writ of mandamus be awarded him, directed to the commissioners, commanding them to issue to him certificates of indebtedness for the amount found to be due him by the district, and that they be required to levy a tax to pay the same.

After the suit had been filed the district, in the summer of 1921, made a new contract with Burks to complete the improvement at a much lower cost than that fixed in the original contract between the appellant and the district, and appellant asked that in the accounting he be allowed credit for the amount saved by the district under this new contract with Burks.

The trial court, after hearing the testimony, found that appellant failed to give the bond required by the statute and by his contract with the district, and that he was not entitled to recover on his claim for profits against the district; that the district was indebted to the appellant in the sum of $10,502.75, which amount should be credited by $7,177.40, leaving a balance due him of $3,325.35; that appellant was indebted to the district in the sum of $6,200, with interest thereon, for the notes, for which the district should have a decree against the appellant, and that, after deducting the $3,325.35 due appellant from the $6,200 and interest due the district, the appellant would be due the district the sum of $3,042, for which the district should be allowed judgment against appellant and his trustees.

The court further found that the appellant was entitled to a credit in the sum of $5,000 for the certified check which he had deposited with the district, which amount should be set-off against the sum of $5,000 paid by the district for the appellant on his indebtedness to Burks. The court also found that Burks had no cause of action against the district, and dismissed his complaint for want of equity against the district and the Bank of DeVall's Bluff, and also dismissed the cross-

complaint of the district against Burks. The court rendered a decree in favor of Burks against the appellant in the sum of $5,445.73 principal, and $612.64 interest, making the total sum of $6,058.37. The appellant, the district, and Burks appeal from the decree in so far as it is adverse to their respective interests. Such other facts as we deem necessary will be stated as we proceed.

1. We will first dispose of the issues presented by the appeal of the appellant. The first question is, was the appellant entitled to recover under the contract? Section 5446 of C. & M. Digest provides as follows: "All contractors shall be required to give bond for the faithful performance of such contract as may be awarded to them, with good and sufficient security in an amount to be fixed by the board of commissioners, and said bond shall contain an additional obligation that such contractor, or contractors, shall promptly make payment to all persons supplying him, or them, labor and materials in the prosecution of work provided for in such contract."

Road improvement districts created under what is known as the Alexander road law, act 338 of the Acts of 1915, ch. 81, C. & M. Digest, §§ 5399 to 5462 inclusive, are *quasi*-governmental agencies of special and limited powers. They can only exercise such powers and in such manner as is expressly authorized by the law under which they are created, or which, by necessary implication, is included in the powers expressly conferred. The language of the above provision in regard to the bond shows that it is mandatory in terms, and a compliance therewith is prerequisite to the validity of any contract between the district and contractors for the building of roads which such district undertakes. The bond is for the benefit and protection, not only of the district, but also of those who supply labor or material to be used in the construction of the improvement.

We cannot agree therefore with learned counsel for the appellant that the giving of the bond is a con-

dition subsequent, and that it does not affect the validity of the contract. On the contrary, the giving of this bond is a condition precedent, and essential to the validity of the contract for the building of roads under the road improvement district law. The commissioners therefore had no authority to enter into this contract with the appellant, and to allow him to enter upon the performance thereof, before he had executed the bond required by the above statute. While the statute does not specify whether the bond shall be made before or after the contract is actually signed, the language clearly contemplates that no contract entered into between the district and contractors shall be binding on the district until the bond is made. Such is the effect, we believe, of the doctrine of our own cases construing similar provisions, and the authorities generally. *Wiegel* v. *Pulaski County,* 61 Ark. 78; *Altheimer* v. *Board,* 79 Ark. 234; *Carswell* v. *Hammock,* 127 Ark. 119; *Ellison* v. *Oliver,* 147 Ark. 267; *Ark. Nat. Bank* v. *School Dist.,* 152 Ark. 507; 19 R. C. L. 1063, sec. 352; 28 Cyc. 1043; 9 C. J. 730; *Bowditch* v. *Supt. of Streets of Boston,* 46 (Mass.) N. E. 1026; *Baker* v. *So. Const Co.* (Ky.), 47 S. W. 608; Donnelly on Public Contracts, § 17. It follows that the contract between the appellant and the district was *ultra vires* and void because no bond was executed in compliance with the statute, and appellant is entitled to recover nothing under the contract. The decree of the court was correct in so holding.

2. The court allowed appellant the sum of $10,502.75 as *quantum meruit* for work he had done, and of which the district had received the benefit, and charged him with the amount the district had paid him and with three notes in the aggregate sum of $6,200 which the district held, and rendered a judgment in favor of the district for the balance. The appellant contends that the amount allowed him for his work on a *quantum meruit* basis was too small, and that the court also erred in not canceling his notes.

It could serve no useful purpose to set out and discuss at length the testimony bearing upon the issue as to whether or not the court should have allowed the appellant a greater sum for the work done by him. The testimony of the engineer of the district tended to show that the work done by appellant was of no real value to the district until the road was completed; that the road, which he had graded in spots, did not become of any real benefit to the district until the entire roadway was completed in 1921. In the meantime a considerable portion of the roadway which appellant had done had washed away because of appellant's failure to properly drain the work. The engineer deducted the amount that was necessary to pay for the work that had washed away from the cost of doing the work at present prices, which left the sum of $10,502.75, the amount allowed the appellant. The appellant contends that he should have been allowed the amount that it cost him to do the work at the time it was done. But the district, on a *quantum meruit*, cannot be made to pay more than the value of the work at the time it received the benefit thereof, and, as the preponderance of the evidence shows, the district did not get the benefit of his work until the summer of 1921. Therefore the measure of appellant's recovery, if he is entitled to recover at all, is the value of his work to the district at that time. 9 C. J. p. 820, § 157.

We cannot agree with learned counsel for the district that the appellant is not entitled to recover on a *quantum meruit,* and that the district is entitled to recover back the amount paid appellant, because, forsooth, the appellant failed to execute the bond, which thereby rendered the purported contract *ultra vires* and ineffectual. The district and the appellant were equally at fault and censurable, the one for permitting and the other for performing work without complying with the statute as to the execution of a bond. The commissioners of the district did not stop appellant from proceeding with the work after they knew that the bond had not

been executed, but, on the contrary, permitted him to proceed with the same, and, in effect, received and accepted the benefits of his work by paying for what he had already done and allowing him to perform that for which he had not been paid before he abandoned the work. While the contract was ineffectual, the work which the appellant did, and the district permitted, did not involve any fraud against the district; and, while the contract was *ultra vires,* yet the entering into such contract is not immoral. The language of the statute does not expressly prohibit the making of such a contract and does not expressly make it unlawful to enter into such a contract. Therefore it does not come within the general rule that, where a contract is immoral or expressly prohibited, or is *malum prohibitum,* no court of justice will entertain an action upon it or upon any asserted rights growing out of it. See *Thalman* v. *Lewis,* 124 Ark. 6; *Carter* v. *Bradley County Road Imp. Dists.,* 155 Ark. 288.

The appellant did the work, the district permitted him to perform it under the supervision of its engineer, and it received the benefit of such work, and it is but just and equitable that the district should pay for the value of the benefit it received at the time the benefit was realized. The court did not err in allowing judgment in favor of the appellant against the district in the sum of $10,502.75, less the amount that had already been paid him by the district.

The judgment rendered by the court in favor of the district against the appellant for the aggregate amount of the notes, $6,200 and interest, was likewise correct. The appellant testified that he gave Argo the notes to help him sell the bonds. He was willing to stand that much loss to hasten the sale of the bonds, so that he could go on with his work. His superintendent of the work advised him that he had a good profit in the job, and that he had best take that much loss in order for the district to get money on the bonds. His idea in giving the notes

was that the bonds could be sold, the district get the money, and he would be paid for his work. Appellant's superintendent testified that the contract could not be let because the bonds could not be sold at par. He told Argo, appellant's banker, about it, and he got in touch with Thweatt, one of the attorneys of the district. The notes were given to make the bonds bring par. Then they revised the bid to take up the $6,200. Appellant was still under all bidders.

Argo testified concerning this that he made a contract with the district to buy the bonds. * * * The notes for $6,200 were given him to take care of the difference between the bonds at 96c and at par. The district was not willing to sell below par. When the bonds were finally sold, he turned appellant's notes over to the district as cash and as part of the purchase price of the bonds. The whole issue of bonds was $155,000. He sold $75,000. He paid $7,500 by paying $1,300 by check and giving the district appellant's notes for $6,200. The district got $67,000 from the bond purchasers, $1,300 from witness by check, and $6,200 of appellant's notes, and witness' original deposit of $2,500, making $77,500 for $75,000 in bonds. Witness lost $3,800 on the transaction, and the arrangement was that the appellant should lose $6,200.

The testimony of Thweatt, one of the attorneys of the district, who was mainly instrumental in negotiating the contract for the district, was to the effect that the appellant was the successful bidder for the work of constructing the road for the district. The commissioners first determined not to award a contract unless they could dispose of the bonds at par. Appellant's bid was $6,200 less than the price of the next lowest bidder. Appellant agreed that he would find a buyer for the bonds at par if the district would permit him to add $6,200 to the price for his work. This proposition the district accepted, and the contract figure included the $6,200 added to the bid prices. Appellant then arranged for Argo to

buy the bonds at par, and gave him the $6,200 in notes as a consideration therefor. Argo had no knowledge of the arrangement between the district and the appellant that his bid might be increased the amount of the notes to Argo. Appellant wanted Argo to make the contract to buy the bonds, and agreed to give him $6,200 consideration therefor, which he did by executing his notes. Argo signed the contract to buy the bonds, and appellant carried out his contract with Argo, which was the consideration for the notes. The notes were afterwards transferred to the district. The district received them from Argo at the time of the transaction in lieu of that much cash.

It thus appears that the notes were unconditional. They were given for a consideration that had already been performed by Argo in the execution of the contract to buy bonds of the district. When the district accepted Argo as a satisfactory buyer for the bonds, the consideration for the notes was performed. The fact that the commissioners of the district entered into a contract whereby they allowed appellant to increase his bid in the amount of the notes did not destroy the consideration upon which the notes were executed to Argo and the consideration from the district to Argo in the contract of the sale of the bonds to him. The district obtained the notes from Argo for a valid consideration, and owns the same, and the appellant is liable therefor. The statute under which this district was created does not prohibit the commissioners from selling bonds below par. The appellant was awarded the contract, and thus secured the opportunity and privilege for doing the work, and received in consideration for his notes an increase of $6,200 in the price that was to be paid him for work that he was to do. The preponderance of the testimony shows that he would have been paid this amount if he had not abandoned the work. Although the contract was *ultra vires,* there was nothing in the law prohibiting the commissioners from allowing him the sum of $6,200 in-

crease in his original bid for the work that he had engaged to do, and, as we have stated, the preponderance of the evidence shows that he would have realized this additional amount which the commissioners agreed to pay him if he had completed his work. The district therefore is entitled to recover the amount of the notes.

3. The court erred in not rendering a decree in favor of Burks against the district in the sum of $5,445.73, with interest. The testimony of Burks was to the effect that, as a subcontractor under the appellant, he did work for which the district received the benefit, and he had not been paid for such work. The total amount of his work in the aggregate was $13,706.82. The district had paid him thereon the sum of $8,261.09, leaving a balance due him of $5,445.73. He performed the work under the supervision of the engineer of the district. The engineer testified, among other things, that this sum was the correct amount due Burks for his work, and that this amount was due on or before August, 1920. He further testified that the work done by Burks was entirely satisfactory.

The testimony tended to prove that the district had withheld $5,000, the cash in its hands which had been deposited by the appellant, and which it had withheld from him because he had failed to pay his subcontractor, and that it turned over this amount to Burks, on the theory that he should have pay for his work and that they were authorized to pay him under the provisions of § 5448 of Crawford & Moses' Digest. That section provides, among other things, that "when it appears to the board of commissioners that the contractor is not paying for labor and material, they may withhold, in addition to the fifteen per cent., any and all amounts due the said contractor until the labor and material has been paid for, or, if they deem it best, they may, upon proper notice to the contractor, pay out to laborers and material-men such funds as are on hand to the credit of the contractor."

While Burks' contract was with the appellant, and while he had no contract with the district, yet the fact remains that Burks did the work under the supervision of the engineer of the district. The commissioners of the district knew that he had not been paid for the work. Neither had the district paid the appellant for this work. The work was satisfactory; the district received the benefit of it; the district does not deny that the work was worth the amount which Burks claims; therefore it occurs to us that, in equity and good conscience, the district is liable upon a *quantum meruit* to Burks in the sum of $5,445.73, with interest at 6 per cent. from August, 1920. For this sum the court should have entered its decree. See *Kramrath* v. *Albany,* 127 N. Y 575; *Buck* v. *Eureka,* 124 Calif. 61; *New Athens* v. *Thomas,* 82 Ill. 259; *Frankfort Bridge Co.* v. *Frankfort,* 18 B. Monroe, 41; *Hardwick* v. *Wolcott,* 61 Atl. 471.

The cause will be remanded, with directions to the trial court to enter final decrees in accordance with this opinion, and for such other and further proceedings as may be necessary to conserve the rights of the parties.

WOOD, J., (on rehearing). In its motion for rehearing the district complains because this court, in the original opinion, did not dispose of the issue between appellant and the district with reference to the certified check of $5,000. The lower court, as shown in the original opinion, rendered a decree in favor of appellant against the district for the amount of this check, and set-off the decree with the sum of $5,000, which the district had paid to Burks on the indebtedness which appellant owed Burks for the work which the latter had done, and for which he had not been paid by appellant or the district. The trial court correctly held, under the circumstances and facts, which are set forth in the original opinion, that the $5,000 belonged to appellant and not to the district.

Judge Dillon says: "Where a bidder accompanies his bid for the performance of a public work with the

deposit of a certain sum, under an agreement to forfeit the sum deposited in case of his neglect or refusal to enter into the contract for the work, and, *without default on the part of the board,* he fails to execute the contract, he cannot recover back his deposit, and the board may declare same forfeited.'' 2 Dillon, Mun. Corp., p. 1222; 28 Cyc. 1032; *Jackson* v. *Adams,* 30 Sou. 694. This is sound doctrine which counsel for the district invokes, but it does not apply to the facts of this record. The appellant did not neglect or refuse to enter into the contract for the work. The fact that he and the district entered into the contract for the work, and that he was allowed to enter upon the performance of the work, without executing the bond in compliance with the statute, which was prerequisite to the validity of the contract, was, at least, as much the fault of the board as it was the fault of appellant. The court ruled correctly in not declaring a forfeiture against appellant of the five thousand dollars. This money belonged to appellant. But appellant owed Burks the sum of $10,502.75 for work which the latter had performed under his contract with appellant. The district was liable, as stated in the original opinion, to appellant for this work on the *quantum meruit.* It was likewise liable to the subcontractor Burks. For it had permitted appellant to have the work done by Burks without first requiring appellant to execute the bond which the statute requires for the protection of the district as well as subcontractors. It received the benefit of the work, and had not paid appellant, nor had appellant paid Burks for same. The district was bound to pay appellant, and appellant was bound to pay Burks, and the district was likewise bound, under the circumstances, to see that Burks was paid.

The appellant concedes here that it is indebted to Burks for the work done by him, and for which he had not been paid. Appellant does not ask that the decree in favor of Burks against him be reversed. On the con-

trary his counsel say: "We do not ask a decree for the $5,000, because we owed Burks, and, if the district is made to refund this $5,000, Burks would pay it back to the district, and his claim would be increased by the same amount. The result would be that we would owe $5,000; that is, instead of owing $5,445, we would owe him $10,445." We adopted this suggestion of counsel, and disregarded the matter of the certified check in the former opinion. But, as counsel for the district, on rehearing, ask for an express decision on the issue between the district and appellant as to the certified check, we now affirm the decision of the chancery court on this issue. We also affirm its decree in favor of Burks against appellant for the sum of $5,445, the balance due Burks after receiving the payment of $5,000, the amount of the certified check. We also direct, as in the original opinion, that the lower court enter a decree in favor of Burks against the district for the sum of $5,445, with accrued interest.

While this result gives Burks a decree against both appellant and the district for the sum of $5,445, for the balance due him for his work, yet he can have only one satisfaction, and the chancery court can direct that, when the district or appellant shall have paid the amount of this decree to Burks, it shall be in satisfaction of the decree in his favor against the district and appellant. The trial court may also direct that, when the district has satisfied the decree in favor of Burks, such satisfaction shall inure to the benefit of the district and set-off the decree in favor of appellant against the district for the same amount.

The decree of the trial court is in all things affirmed, except in dismissing Burks' complaint against the district. The decree in this particular is reversed, and the cause is remanded with directions to enter a decree in favor of Burks against the district for the sum of $5,445, with accrued interest, and such further proceedings as may be necessary to conserve the rights of all the parties according to law and not inconsistent with this opinion.