BUSH *v.* MARTINEAU.

Opinion delivered May 23, 1927.

1.  CONSTITUTIONAL LAW—POWERS OF LEGISLATURE.—Since the Constitution is not an enabling but a restraining act, the Legislature may rightfully exercise its powers subject only to the limitations and restrictions of the Constitution of the United States and of the State of Arkansas.

2.  CONSTITUTIONAL LAW—VALIDITY OF STATUTE.—An act of the Legislature is presumed to be constitutional, and will not be held otherwise, unless clearly incompatible with the Constitution, and all doubt on the question must be resolved in favor of the act.

3.  STATE—ISSUANCE OF NOTES TO CONSTRUCT ROADS.—Acts 1927, No. 11, authorizing the State to borrow money for the construction of any roads, and to issue State highway notes therefor secured by certain revenues, is not contrary to Constitution, art. 16, § 1, providing that the State shall not loan its credit for any purpose.

4.  CONSTITUTIONAL LAW—VALIDITY OF STATUTE.—The courts cannot strike down an enactment of the Legislature on the ground that it is contrary to the supposed spirit of the Constitution, but can do so only when contrary to some prohibition made expressly or by necessary implication.

5.  HIGHWAYS—CREATION OF PERMANENT STATE OFFICES.—The fact that the State highway acts (Acts 1927, Nos. 11, 80) do not limit the terms of the offices created, does not render them contrary to Constitution, art. 19, § 9, providing that the General Assembly shall have no power to create any permanent offices not expressly provided for by the Constitution.

6.  STATE—NOTES AS OBLIGATIONS OF STATE.—Under Acts 1927, No. 11, § 5, providing that the State shall borrow the necessary amount of money for the construction of new roads, and issue State highway notes for the amount borrowed, to be secured by a pledge of certain revenues, the State may pledge full faith and credit to the payment of the notes and make them direct obligations.

7.  STATE—PLACE OF PAYMENT OF NOTES.—Though Acts 1927, No. 11, providing for the issuance of State highway notes to provide for construction of new roads, provides that the notes "may" be made payable in St. Louis or Chicago, such notes may be made payable in New York; the word "may" being used in a permissive sense and not a mandatory one.

8.  STATE—PAYMENT OF DEBTS OF ROAD DISTRICTS.—The State highway act (Acts 1927, No. 11), which provides for payment by the State of existing bonded indebtedness of road districts, is not

contrary to Constitution, art. 12, § 12, providing that the State shall never assume or pay the debt of any town, city or other corporation, as road districts are not corporations within this section.

9. STATUTES—PRESUMPTION IN FAVOR OF ENROLLED STATUTE.—Where a statute is enrolled, signed by the Governor, and deposited with the Secretary of State, the court will conclusively presume that it was validly enacted under Constitution, art. 5, § 22, unless the contrary affirmatively appears from the records of the General Assembly.

Appeal from Pulaski Chancery Court; *Frank H. Dodge,* Chancellor; affirmed.

*R. E. Wiley,* for appellant.

*Coleman & Riddick,* for appellee.

McHANEY, J. Appellant instituted this action in the Pulaski Chancery Court, challenging the constitutionality of acts Nos. 11 and 80 of the Acts of 1927, approved February 4 and March 3, 1927, respectively, commonly referred to as the State Highway Acts. A demurrer to the complaint was sustained, and, as appellant declined to plead further, his complaint was dismissed for want of equity, from which comes this appeal.

The title of act No. 11 is "An act to amend act No. 5 of the extraordinary session of the Forty-fourth General Assembly of the State of Arkansas, approved October 10, 1923," and § 1 of the act declares a definite policy on the part of the State with reference to its State highway system in this language: "It is hereby declared to be the policy of the State to take over, construct, repair, maintain and control all the public roads in the State comprising the State highways as defined herein." The original act, of which this is amendatory, the Harrelson Act, has been before this court for consideration and has been sustained in the following cases: *Bonds* v. *Wilson,* 171 Ark. 328, 284 S. W. 24; *Cone* v. *Hope-Fulton-Emmett Road Imp. Dist.,* 169 Ark. 1032, 227 S. W. 544.

Before proceeding to a discussion of the issues raised by this appeal, we deem it proper to premise our remarks by two fundamental rules of construction

announced and adhered to throughout the history of this court. First, that the Constitution of this State is not a grant of enumerated powers to the Legislature, not an enabling, but a restraining act (*Straub* v. *Gordon,* 27 Ark. 629), and that the Legislature may rightfully exercise its powers subject only to the limitations and restrictions of the Constitution of the United States and of the State of Arkansas. *St. L. I. M. & S. Ry. Co.* v. *State,* 99 Ark. 1, 136 S. W. 938; *Vance* v. *Austell,* 45 Ark. 400; *Carson* v. *St. Francis Levee Dist.,* 59 Ark. 513, 27 S. W. 590; *Butler* v. *Board, etc.,* 99 Ark. 100, 137 S. W. 251. In other words, as was said in *McClure* v. *Topf & Wright,* 112 Ark. 342, 166 S. W. 174: "It is not to be doubted that the Legislature has the power to make the written laws of the State, unless it is expressly, or by necessary implication, prohibited from so doing by the Constitution, and the act assailed must be plainly at variance with the Constitution before the court will so declare it." Second, that an act of the Legislature is presumed to be constitutional, and will not be held by the courts to be unconstitutional unless there is a clear incompatibility between the act and the Constitution; and further, that all doubt on the question must be resolved in favor of the act. *State* v. *Ashley,* 1 Ark. 552; *Eason* v. *State,* 11 Ark. 481; *Dabbs* v. *State,* 39 Ark. 353, 43 Am. Rep. 275; *Sallee* v. *Dalton,* 138 Ark. 549, 213 S. W. 762; and in *Standard Oil Co. of La.* v. *Brodie,* 153 Ark. 114, 239 S. W. 753, this court quoted the language of the Supreme Court of the U. S. in *Hooper* v. *California,* 155 U. S. 657, 15 S. Ct. 207, 39 L. ed. 297, that "the elementary rule is that every reasonable construction must be resorted to in order to save the statute from unconstitutionality." There are a great many decisions of this court announcing and following these rules under a great variety of circumstances, and we do not therefore cite or quote from more of them.

Bearing in mind these elementary rules of construction, let us now take up the specific objections to these acts pointed out by appellant as rendering the acts unconstitutional.

1. It is urged that, since act No. 11 provides for the issuance by the State of interest-bearing evidences of indebtedness, it is in violation of § 1 of art. 16 of the Constitution, which reads as follows:

"Neither the State nor any city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the present existing indebtedness, and the State shall never issue any interest-bearing treasury warrants or scrip."

We will not quote the acts questioned in full, but only such parts as appear to be pertinent. Section 4 of act 11 is as follows:

"It shall be the duty of the Commission to construct the roads in the State highway system which are not now constructed, the work of construction to be pushed as rapidly as funds are available for that purpose. The Commission shall begin the work of construction in those counties in which the roads embraced in the State highway system have not been constructed by improvement districts, or in which only a small portion of such roads have been constructed, and shall continue construction work in such counties until the completed roads in each county in the State have been brought to a parity, after which construction work shall be distributed throughout the counties so as to maintain the parity, as far as practicable."

Section 5, after making it the duty of the State Highway Commission to make certain allotments for the construction of new roads for the next four years, provides:

"To provide the funds to meet this requirement, the State shall borrow each year whatever amount may be necessary, in addition to the money derived from automobile licenses and fees, gasoline and motor-oil taxes, and from Federal aid, on such terms as to interest and

maturities, and subject to the limitations hereinafter set out, as may be determined to be for the best interest of the State highway system, and to issue State highway notes for. the amount borrowed, to be secured by a pledge of the revenues derived from gasoline, motor-oil and automobile taxes, and to pledge said revenues, or so much thereof as may be necessary, for the payment of said notes,'' etc.

''Such notes issued by the State shall be known as State highway notes, shall be signed by the Governor, the State Treasurer and the State Highway Commissioner, and attested by the Secretary of State, and shall state in the face of said note that the revenues derived from gasoline, motor-oil and automobile taxes are pledged for the payment of such notes.''

The above section of the Constitution appears quite simple. The first thing prohibited therein is the lending of its credit by the State, city, etc., for any purpose. It is not proposed in the act under consideration that the State shall ''*loan* its credit,'' but only *use* its credit. The second prohibition in said section leaves the State out of the thing prohibited altogether, and lays the restraining hand only on ''any county, city, town or municipality'' in the issuance of interest-bearing evidences of indebt-· edness, except to cover the then existing indebtedness. The State was not left out of this second prohibition or limitation by inadvertence, oversight or mistake, but by intention or design. *Hays* v. *McDaniel, State Treasurer,* 130 Ark. 52, 196 S. W. 934.

The third prohibition in this section of the Constitution applies to the State alone, that is, that it ''shall never issue any interest-bearing treasury warrants or scrip.'' This third prohibition manifestly can have no application to this case, for it is not proposed to issue any interest-bearing treasury warrants or scrip.

This court has held directly contrary to this contention of appellant. In *Jobe* v. *Urquhart*, 102 Ark. 470, 143 S. W. 121, Ann. Cas. 1914A, 351, it was said:

"The General Assembly has plenary powers to contract for and create interest-bearing indebtedness on the part of the State, except to issue interest-bearing treasury warrants or scrip."

This case was cited with approval in *Hays* v. *McDaniel, State Treasurer, supra,* where it was again held that the Legislature could authorize the issuance of interest-bearing evidences of indebtedness for its purposes, and we do not think the court intended to limit the power of the Legislature in this regard to the particular "purpose" then under consideration. If the Legislature has "plenary power to contract for and create interest-bearing indebtedness," when "the authority to bind the State to the payment of interest on her indebtedness" is plainly expressed in the act, as held in *Jobe v. Urquhart, supra,* then it would appear to be certain that it could validly exercise such power for the building of roads, when the act expressly declares it to be the policy or "purpose" of the State so to do. Appellant concedes on this point that these decisions are contrary to his contention, and that we should reconsider the rule in *Hays* v. *McDaniel,* with which we do not agree, and further says that the act in question is violative of the spirit of this section of the Constitution. But we cannot strike down a solemn enactment of the Legislature on any supposed spirit of the Constitution. As before stated, we can only do so when the power is expressly, or by necessary implication, prohibited.

In 1 Cooley's Constitutional Limitations (8th ed.) page 351, the author says:

"Nor are the courts at liberty to declare an act void because in their opinion it is opposed to a *spirit* supposed to pervade the Constitution, but not expressed in words, when the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the Legislature. We cannot declare a limitation under the notion of having discovered something in the *spirit* of the Constitution which is not even mentioned in the instrument."

We therefore hold this point not well taken.

2. It is next urged that the acts create permanent State offices, in violation of § 9, art. 19, which provides that "the General Assembly shall have no power to create any permanent State office not expressly provided for by this Constitution," for the reason, as stated, that the acts do not limit the time of the existence of the offices created. On this point appellant is again precluded by the former decisions of this court. *Greer* v. *Merchants' etc., Bank,* 114 Ark. 212, 169 S. W. 802; *Fort Smith Dist. of Sebastian Co.* v. *Eberle,* 125 Ark. 350, 188 S. W. 821.

3. The next contention is that the form of the notes proposed to be issued by the State is without authority in the act itself (act 11), in that they are made direct obligations of the State, for which the full faith and credit of the State are pledged. The notes are to contain this clause: "The State of Arkansas also covenants that this and all other obligations of this series will be paid promptly as they mature, and to their payment the full faith and credit of the State are irrevocably pledged."

Section 5 of the act, heretofore set out, provides that the *State* shall borrow the money and that the *State* shall issue the notes. There is no provision for the Highway Commission to borrow the money and issue its notes, although the commission and the note board are agencies of the State for the purpose, for the language of the act is "to provide the funds to meet this requirement, the State shall borrow each year whatever amount may be necessary," etc. It is difficult to perceive why the State's full faith and credit should not be pledged, if it is to borrow any money. The fact that it pledges the funds arising from the tax on gas, oil and motor vehicles does not relieve the State otherwise. The State is not and should not be in any different or more favorable situation in this regard than an individual. A farmer who borrows money from his bank and mortgages his crop to secure the payment of his note is not relieved of payment in the event of crop failure. All the faith

and credit he has, in addition to the crop, are pledged to the payment of his debt. Necessarily it must be so with the State. Even if the notes were made payable only out of this particular fund, yet if the fund failed, or was insufficient, there would be a moral, if not a legal, obligation on the State to pay. The only difference between the obligations of an individual and the State is that the individual may be compelled to pay in a civil action, whereas the State can never be sued in any of her courts, even though morally and legally obligated to pay. There can be no just reason in law why the notes should not contain this clause, and we therefore hold that these notes, when issued, will be the direct obligations of the State, for the payment of which the full faith and credit of the State are pledged.

4. There is no merit to the contention that, since the act provides that the notes "may" be made payable in St. Louis or Chicago, they cannot be made payable in New York, as the form of the notes provides. The word "may" is here used in its permissive sense and not in a mandatory sense, such as is imported in the words "must" or "shall," unless it plainly appears "that the Legislature intended to impose a duty and not merely a privilege or discretionary power, and that the public or third persons are interested and have a claim of right to have the power exercised." *Little River Co.* v. *Buron,* 165 Ark. 535, 265 S. W. 61; *Washington Co.* v. *Davis,* 162 Ark. 335, 258 S. W. 324. The legislative intent was to vest in the board the discretionary power of making the notes payable wherever sold, and St. Louis and Chicago were mentioned in the belief that they might be sold at one or both of these places.

5. It is next contended that, because act No. 11 provides for the payment, in whole or in part, of the existing bonded indebtedness by the several road districts, it violates § 12 of art. 12 of the Constitution, which is as follows:

"Except as herein otherwise provided, the State shall never assume or pay the debt or liability of any

county, town, city or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the State ever be released or in any manner discharged save by payment into the public treasury.''

The limitation here provided is that ''the State shall never assume or pay the debt or liability of any county, town, city of other corporation.'' Unless it can be said that a road improvement district is a ''corporation'' within the meaning of this section, it is plainly manifest that this section of the Constitution can have no application. Counties, towns and cities are corporations, and we are of the opinion that the words ''or other corporation'' has reference to the same kind of organization referred to in § 2 of art. 12 which prohibits the Legislature from passing any special act conferring corporate powers. Concerning this latter section, in *Carson* v. *St. Francis Levee Dist.*, 59 Ark. 535, 27 S. W. 590, this court said:

''Giving corporate capacity to certain agencies in the administration of civil government is not the creation of such an organization as was sought to be prohibited by article 12 of the Constitution. The mere fact that the organizations (*quasi* corporations) are declared in the statutes to be bodies corporate has little weight. We look behind the name for the named. Its character, its relations and its functions determine its position, and not the mere title under which it passes.''

Continuing, the court said: ''The principle announced in these decisions, and the numerous authorities cited therein for their support, meet our views on the subject; and the main doctrine therein announced, to the effect that conferring corporate powers by the Legislature upon agencies of the State, appointed to perform some public work, in the course of the administration of civil government, in order to the more efficient performance of the duties imposed, is not such an act as is pro-

hibited by the Constitution, we think, is founded upon sound reasoning as well as authority.''

The effect of this holding is that a levee district is not such a corporation as mentioned in § 2, art. 12. Any number of road improvement districts have been created by special act of the Legislature, and all of them are declared to be bodies corporate for the purpose of their creation, and this court has held directly that a road improvement district is not a corporation within the meaning of § 2, art. 12, of the Constitution. They have been held to be *quasi* governmental or State agencies of special and limited powers. *Burt* v. *Road Imp. Dist.,* 159 Ark. 275, 253 S. W. 1. Furthermore, under the rules of construction announced at the outset, to the effect that the act must be sustained unless the power is expressly or by necessary implication prohibited, it might be held that the qualification, ''unless * * * to provide for the public welfare,'' eliminates State highways from this prohibition, as they are for the public welfare in a sense. But we do not deem it necessary to discuss this point, as we hold that road districts are not such corporations mentioned in § 12, article 12, of the Constitution. *Bank of Commerce* v. *Huddleston,* 172 Ark. 999, 291 S. W. 422.

6. It is finally claimed that the acts in question were not passed in accordance with the requirements of § 22 of art. 5 of the Constitution, as follows:

''Every bill shall be read at length on three different days in each house, unless the rules be suspended by two-thirds of the house, when the same may be read a second or third time on the same day; and no bill shall become a law unless, on its final passage, the vote be taken by yeas and nays, the names of the persons voting for and against the same be entered on the journal, and a majority of each house be recorded thereon as voting in its favor.''

This contention is without merit. As was said in *Road Imp. Dist. No. 16* v. *Sale,* 154 Ark. 551, 243 S. W. 825:

"The rule is firmly established in this State that an enrolled statute signed by the Governor and deposited with the Secretary of State raises the presumption that every requirement was complied with, unless the contrary affirmatively appears from the records of the General Assembly, and that this presumption is conclusive unless the records, of which the court can take judicial knowledge, show to the contrary.".

Furthermore, we have examined the journal entries and find every constitutional requirement regularly complied with.

. We find no error, and the decree is accordingly affirmed.

WOOD and KIRBY, JJ., dissent.