. HAYS *v.* McDANIEL, STATE TREASURER.

Opinion delivered June 18, 1917.

1. STATE—RIGHT TO BORROW MONEY AND PAY INTEREST THEREON.—The Act of 1917 authorizing the borrowing of a certain sum of money to cover deficiencies in the State's general revenue fund, to issue interest-bearing evidences of indebtedness therefor, to levy a tax to create a sinking fund to pay the interest and principal of said loan, and for other purposes, *held* valid.

2. STATE DEBT BOARD—The State Debt Board, as provided for in Kirby's Digest, *held* to be in existence for the purpose of this act.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Geo. W. Hays,* appellant, *pro se.*

1. The Act is unconstitutional and void. It is violative of Const., Art. 16, § 1. The Constitution of 1874 intended to put the State out of the money-borrowing and interest-paying business. There is no provision giving the Legislature power to issue interest-bearing bonds, notes, warrants or scrip. The only authority given was to provide for the outstanding indebtedness that existed at the time of its adoption. Art. 16, § 2.

The conditions that existed and the intention of the people at the time should be carefully considered. 10 Pac. 641; Black on Const. Law (2 ed.) 68, § 48 *et seq.;* 1 Tiedeman State and Federal Control of Persons and Property, 7 to 21.

The State is prohibited from loaning its credit and from issuing bonds bearing interest except as stated above. Also from issuing any interest-bearing evidences of indebtedness, scrip or warrants. The State is a "municipality."

2. The State Debt Board has long since performed its mission and is now out of existence and is not re-established by the Act. The Act is void for lack of provision for its execution. Kirby's Digest, § § 6462, 6463, etc. It was not a permanent *debt board,* but created for certain specific purposes, which being fulfilled it automatically ceased to exist.

3. 102 Ark, 470 is not in point.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The act violates none of the three clauses of Art. 16, § 1, Const. 1874.

The issue of notes to provide for its *own* credit and purposes is not a *"loan* of credit" by the State, but is to cover any deficiency in its general revenues. It is for the State's own benefit and use and in no sense a loan of its credit for or to others. 10 Fed. Cas. No. 5756.

2. The State is not mentioned in the second clause, which only applies to counties, cities, towns and municipalities. It does not apply to the State.

3. "Warrants" and "scrip" are synonymous. They are orders on the Treasurer to pay when he has funds available. 8 Wash. 497; 21 Fed. 699; 46 La. Ann. 714; 60 Fed. 203. The State is not prohibited from issuing interest-bearing certificates of indebtedness or notes. The Legislature is supreme, and may legislate upon all questions affecting the general welfare of the people, unless *prohibited* or restrained by the Constitution. It

needs no grant of power or authority.   102 Ark. 478-9;
85 *Id.* 175.

4.   The State Debt Board is composed of the Governor, Secretary of State and Auditor. Acts 1887, p.
269; Acts 1889, p. 158; Acts 1891, p. 234; Acts 1899, p.
270.   It is a continuing board and has never been abolished.

SMITH, J.   The General Assembly, at its 1917 session passed an act, Act No. 100, p. 478, entitled, "An Act to
borrow money to cover deficiencies in the State's General
Revenue Fund, to issue interest-bearing evidences of indebtedness therefor, to levy a tax to create a sinking fund
to pay the interest and principal of said loan, and for other
purposes." The State Debt Board is charged with the
performance of certain duties in the execution of the
provisions of the act, but the persons composing this
board are not named in this act.   The Treasurer of
State, *eo nomine,* is charged with the duty of registering
negotiable promissory notes which the act provides
shall be issued by the State Debt Board in the negotiation of the loan of money there authorized, and the act
imposes certain other duties upon the State Treasurer.
Appellant, who is a citizen and taxpayer of the State,
filed a complaint, in which he alleged that the Treasurer
of the State is about to perform the duties imposed upon
him by said act, and will do so unless enjoined from so
doing, and the complaint contained a prayer for this relief.

As ground therefor, it is alleged that the act is unconstitutional, being violative of Section 1 of Article 16
of our Constitution.   It is further alleged that the act
is void for indefiniteness, in that it does not designate
the members of the State Debt Board and the membership of said board is not otherwise designated.

The section of the Constitution referred to reads as
follows:

"Neither the State nor any city, county, town or
other municipality in this State shall ever loan its credit
for any purpose whatever; nor shall any county, city,

town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the present existing indebtedness, and the State shall never issue any interest-bearing treasury warrants or scrip.''

This section contains three inhibitions, as follows:

First, that neither the State, nor any city, county, town or other municipality therein, shall ever loan its credit for any purpose whatever.

The second inhibition is that no county, city, town or municipality shall ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution.

The third is that the State shall never issue any interest-bearing treasury warrants or scrip.

The act of the Legislature under consideration does not violate the first subdivision of this section 1 of article 16 of the Constitution, because the act does not contemplate any loan of the State's credit. No ordinary definition of the word ''loan,'' nor ordinary construction of the language of the clause in which it appears, can make it cover the act which the State is here seeking to do. The State is not lending its credit, but is proposing to use its credit for its own purposes. The State is not undertaking, in any manner, to assume any obligation for any purpose other than its own use, and this use of its credit can not be called a loan thereof. The construction of the language employed, which we think is ambiguous, is reinforced by a consideration of the contemporaneous history, which discloses the evil against which the Constitution was providing. The State had loaned its credit, and in a manner which had largely destroyed this credit, whether employed for its own use, or loaned in promotion of interests which it had undertaken to foster. It appears that the Constitution-makers have employed a word which denies to the State the right to permit an-

other agency to use its credit, but which does not deny the State its right to use this credit for its own purposes.

The second inhibition is, that no county, city, town or municipality shall ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution. It is said that the word "municipality" here employed, includes the State. But we do not agree with counsel in this contention. If it be conceded that the word municipality has sometimes been used by courts and text-writers as of sufficient breadth to include a sovereign State, it does not follow that it was so employed here. The framers of the Constitution were dealing with a subject of the highest importance and evidently chose their language with great discrimination, and we can not assume that they intended the word "municipality" to embrace the State. To do so would render meaningless and wholly unnecessary the third clause of this section, which provides that the State shall never issue any interest-bearing treasury warrants or scrip. This second clause inhibits the issuance of any interest-bearing evidences of indebtedness. Treasury warrants and scrip are evidences of indebtedness, and it would have been an idle thing to do to prohibit the State, along with the counties, cities and towns therein, from issuing any interest-bearing evidences of indebtedness, and then, in the following clause of the same section, to repeat the inhibition against the issuance of a form of indebtedness which was inhibited under the preceding clause.

The State is intended and is designated only in the first and third clauses of this section of the Constitution, and the State alone is designated in the third clause, and we must, therefore, conclude that the State would have been named in the second clause had it been intended that its inhibitions should apply against the State.

The Constitution is not a grant of power to the State, and we are not required to look to the Constitution for authority for legislative action. The State, acting

through its Legislature, may borrow money for its own uses unless that right is denied to it by the Constitution and the only inhibition against the State there contained, in this respect, is that it shall not issue any interest-bearing treasury warrants or scrip.

We have more than once said that a statute, enacted shortly after a constitutional convention, by a Legislature containing members of the convention, should be given weight as indicating the construction put upon the Constitution under which the statute is enacted. *Speer v. Wood,* 128 Ark. 183, 193 S. W. 785. A session of the General Assembly, which convened in the year in which the Constitution was adopted, and which numbered several members of the constitutional convention among its membership, passed an act to provide means for paying the expenses of the State government, and to retire outstanding Auditor's warrants and Treasurer's certificates. Acts 1874 (December 23, 1874), page 72. Section 11 of this act is as follows:

"Sec. 11. None of said bonds shall be sold for money for any other purpose than to defray the expenses of the State government and the proceeds of such sales shall be applied to that purpose exclusively, and shall be apportioned by said board among the various appropriations for paying the said expenses in such manner as may best serve the interest of the people, and no money shall be paid out by the Treasurer except in pursuance of such apportionment; *provided,* that not more than five hundred of such bonds shall be sold for money in any one year."

The case of *Jobe* v. *Urquhart,* 102 Ark. 470, involved the right of the Board of Commissioners of the State Penitentiary, who were acting under the authority vested in them by the act of the General Assembly, approved June 24, 1897, to buy a convict farm for an agreed sum paid in cash and for a balance to be paid annually with interest. The right of the officials acting for the State to enter into a contract involving the payment of interest was there questioned. The court there said:

"The General Assembly has plenary powers to contract for and create interest-bearing indebtedness on the part of the State, except to issue interest-bearing treasury warrants or scrip. But the authority to bind the State to the payment of interest on her indebtedness must be plainly expressed and not implied. * * * But the appellee insists that, if the board was not authorized to contract for interest, its action in so doing was ratified by the subsequent action of the Legislature in the passage of the act approved May 31, 1909. In answer to this position, it must be conceded in the outset that the Legislature had the power and the right to extend the legal liability of the State in respect to the item of interest and to provide for its payment by appropriation of a fund for that purpose; but this must be done in the manner pointed out by the Constitution."

The negotiable promissory notes which the act under consideration authorizes the State Debt Board to sell, are evidences of indebtedness, but they are not treasury warrants or scrip. The meaning of treasury warrants or scrip is well known. The State and many of the counties, then and now, have been and are compelled, through lack of public revenue, to draw these treasury warrants, commonly called scrip. This scrip is an order on the Treasurer to pay the sum named whenever available funds are in the treasury. Sections 3412 and 1459 of Kirby's Digest. The exigencies of government require the issuance of these treasury warrants or scrip whether they can be cashed upon presentation or not, but, for reasons which the makers of the Constitution thought sufficient, it has been provided that not even the State may issue interest-bearing treasury warrants or scrip. This is the inhibition of the third clause of the section of the Constitution above quoted, and is the only inhibition as against the right of the State to use its credit for its own governmental purposes.

It is finally insisted that the act is void for uncertainty, for the reason that it does not designate the persons composing the State Debt Board. It was not neces-

sary that the act should do so. Section 6462 of Kirby's Digest provides that the Governor, Secretary of State, Auditor and Treasurer of State are constituted a State Debt Board for the purposes mentioned in the act there digested. It is said that the purposes of that act have been performed and that, therefore, the board has ceased to exist. We do not stop to inquire whether all duties imposed by law upon this board have, in fact, been performed, for the reason that the act creating the board has never been repealed. The Legislature may have thought that future duties could and would be imposed upon this board and the act under consideration has done so, and we think it unnecessary that the Legislature should have re-created a board which it had never abolished.

Finding no error in the decree of the court below, the same is affirmed.