FITZHUGH *v.* FORD.

5-1837                                                323 S. W. 2d 559

Opinion delivered May 4, 1959.

*James L. Sloan,* for appellant.

*Bruce Bennett,* Atty. General, by *Ben J. Harrison,* Chief Asst. Atty. General. for appellee.

PAUL WARD, Associate Justice. This appeal challenges the (Arkansas) constitutionality of Act 5 passed by the 1958 Second Extraordinary Session of the General Assembly, which Act provides for the allocation of certain school funds for the benefit of those students who attended the schools closed under Act 4 of the same session of the General Assembly.

On September 16, 1958, L. R. Fitzhugh, et al, being resident citizens, taxpayers and electors of the Little Rock School District, filed a petition in Chancery Court against Arch Ford as Commissioner of Education and Joe L. Hudson, the disbursing agent, alleging that said Act 5 violated Article 12, Section 12; Article 16, Section 11, and: Article 16, Section 1 (as amended by Amendment 13), and that the defendants will unlawfully withhold and redistribute state funds unless enjoined from doing so. The prayer was in accordance with the above allegations.

On September 30, 1958, defendants demurred to the petition on the ground that it did not state a cause of action. Upon the court sustaining the demurrer and upon the petitioners' refusal to plead further, the petition was dismissed, and this appeal follows.

In essence, Act 5 provides: (a) It requires the Commissioner of Education to withhold certain *State Funds* (otherwise allocable to a school district wherein a school has been closed under said Act 4) in an amount calculated on a certain *pro rata* basis, the correctness of which is not challenged here and which is not material to this opinion; (b) It requires the Commissioner of Education to pay over to other *public schools* or *non-profit private schools* accredited by the State Board of Education the funds so withheld an amount calculated on a *pro rata* basis according to the number of students (from the closed schools) attending a recipient school. Simply and briefly stated, Act 5 provides that the money which normally would be spent on a student in a closed school would be paid to the school which he might later attend.

It is contended by appellants that Act 5 violates the three sections of the Arkansas Constitution set out above,

and we will discuss them separately in the order mentioned.

1.  Article 12, Section 12, in relevant part provides:

"Except as herein otherwise provided, the State shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense."

Appellants' argument in relation to the above section is directed only to the payment of public school funds to a *private school*. Frankly, we are unable to see how the transactions contemplated under Act 5 create a debt or liability on the part of a non-profit private school. If a student from a closed school attends such a private school, any resulting debt or liability would be payable to the school, not by it. Consequently there would be no school debt or liability for the State to assume or pay. There might, of course, be a debt owing by the student to the school, and if we can imagine a student being placed in the category of a "county, town, city, or other corporation", even then the payment by the State of such a debt has often been approved by our legislature without challenge as to legality. Act 382 of 1947 (now repealed) provided for the state to pay the expenses of World War II veterans who might wish to study veterinary medicine, dentistry, architecture, *etc.*, in schools outside the State of Arkansas. For that purpose $100,000 was appropriated from the General Revenue Fund. Act 243 of 1957 makes similar provisions without restrictions as to courses pursued. Act 313 of 1945 (Ark. Stats. 78-1601) empowers the State to make leases to the Arkansas Livestock Show Association, a private organization, and to furnish money "for the purpose of paying premiums . . ." These and other acts that might be cited are not relied on primarily to sustain the constitutionality of Act 5 but to show a trend or policy that was adopted by the State long before Act 5 was enacted.

2.  We do not agree with the contention by appellants that Act 5 violates Article 16, Section 11, of the

534

State Constitution. This section reads: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; *and no moneys arising from a tax levied for one purpose shall be used for any other purpose.*" The portion emphasized is what appellants believe to be relevant here. Nor do we agree with appellants that *Page, Treasurer* v. *Alexander, Treasurer,* 206 Ark. 479, 177 S. W. 2d 415, sustains their contention, because the facts were entirely different. In the *Page* case this court, in construing Act 187 of 1943 which directs that a certain per centum of the sales tax should go to "cities and counties," held it did not include funds accruing before the effective date of the Act. It will be noted that Act 5 deals only with *State Funds* allocable to individual school districts. So, when a portion of the money allocated to a particular school district follows a student from that district to another school, the finances of no other school district are affected adversely. Legally this amounts to nothing more than transferring a student in one school district to a school in another district accompanied by his portion of the tax fund, which has long been sanctioned by legislative enactment and by this Court. See: Ark. Stats. Section 80-1517, *Jones* v. *Floyd,* 129 Ark. 185, 195 S. W. 360, and *Van Buren County Board of Education* v. *Suggs,* 183 Ark. 535, 37 S. W. 2d 703. We also held in *Ruff* v. *Womack,* 174 Ark. 971, 298 S. W. 222, under facts much more favorable to appellants than those of this case, that there was no diversion of funds and hence no violation of Article 14, Section 2 of our Constitution. This section is very similar to, if not in effect the same as, the section here under consideration.

3. Finally, appellants say Act 5 violates Article 16, Section 1, (as amended by Amendment No. 13) of the Constitution. As stated by appellants, the relevant portion of the above section prohibits the State from lending "its credit for any purpose whatever." Appellants have failed to point out the manner in which the State would be lending its credit under the provisions of Act 5, and we can think of none. In fact we fail to see how credit is in any way involved. No money will be ex-

pended until after it has been collected and appropriated. All the decisions of this court approaching the issues here that we have been able to find are contrary to appellants' contention. See: *Hays* v. *McDaniel, Treasurer,* 130 Ark. 52, 196 S. W. 934; *Schmutz* v. *Special District of Little Rock,* 78 Ark. 118, 95 S. W. 438; *Lackey* v. *Fayetteville Water Company,* 80 Ark. 108, 96 S. W. 622; *Board of Directors of Jefferson County Bridge District* v. *Collier,* 104 Ark. 425, 149 S. W. 66; and *Halbert* v. *Helena-West Helena Industrial Development Corporation,* 226 Ark. 620, 291 S. W. 2d 802.

Affirmed.

McFADDIN, J. concurs.

ED. F. McFADDIN, Associate Justice (concurring).

As stated in my dissenting opinion in *Garrett* v. *Faubus,* 230 Ark. 445, 323 S. W. 2d 877, (opinion of April 27, 1959), I regard Act No. 4 of the Second Extraordinary Session of the 1958 Legislature to be violative of Section 1, Article 14 of the Arkansas Constitution; and I think the entire plan of closing the schools should be declared unconstitutional. I continue to adhere to the views so expressed. If those views had prevailed, the Act No. 5, here involved, would fall, because it would have no foundation with Act No. 4 stricken.

But, even so, in *Garrett* v. *Faubus,* a majority of this Court held that the Act No. 4 was constitutional for the "present emergency". In view of such holding, I certainly think Act No. 5 should be sustained. It is a serious effort to help provide schooling for children whose schools have been closed. Of course, the schools should not have been closed, but they have been; and in Act No. 5 the State has recognized its duty to provide education. Act No. 5 applies only to State funds—not to the millage funds voted in the school district.

We have in equity the doctrine known as *cy-pres,* which means, "as near as possible. I think Act No. 5 should be upheld under the doctrine of *cy-pres.* It is an attempt to provide education "as near as possible". It

536

is no more a diversion of State funds than the application of the equitable doctrine of *cy-pres* is a diversion of the original trust funds.

So, even though I regard Act No. 4 as unconstitutional, I nevertheless think that Act No. 5 should be upheld, since the majority has refused to go along with me in my views on Act No. 4.