Jim Hill, Superintendent Arkansas School for the Blind 2600 W. Markham, Box 668 Little Rock, AR 72203
Dear Superintendent Hill:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Do the provisions of S.B. 45, as engrossed on February 3 and 5, 2003, specifically Section 8, Subsections (f), (g) and (h), conflict with Ark. Const. amend. 33 or any other constitutional laws which establish and grant powers to the board of the Arkansas School for the Blind and the Arkansas School for the Deaf and the respective superintendents of the two institutions?
RESPONSE
I do not believe the referenced subsections of S.B. 45, which propose to transfer into a newly created Department of Education the Arkansas School for the Blind, the Arkansas School for the Deaf, and these two institutions' board of directors (the "Board"), conflict with the provisions of Ark. Const. amend. 33. S.B. 45 expressly acknowledges in its text that Amendment 33 will control over any contrary provision of the proposed legislation. Vested control over these institutions will consequently remain in their Board. However, I should note that Amendment 33 does not apply to the superintendents, whose range of authority is defined by statute or Board resolution.
Amendment 33 of the Arkansas Constitution applies to "the boards or commissions charged with the management or control of all charitable, penal or correctional institutions and institutions of higher learning of the State of Arkansas, now in existence or hereafter created." Ark. Const. amend. 33, § 1. Section 2 of the amendment provides:
 The board or commission of any institution, governed by this amendment, shall not be abolished nor shall the powers vested in any such board or commission be transferred, unless the institution is abolished or consolidated with some other State institution. In the event of abolition or consolidation, the new board or commission shall consist of a membership of five, seven, or ten.
As my predecessor noted in Ark. Op. Att'y Gen. No. 97-153, Amendment 33 applies to the Board:
 Amendment 33 of the Arkansas Constitution was adopted in November, 1942. It charged the General Assembly with the task of arranging the terms of the board members of all charitable, penal or correctional institutions and institutions of higher learning of the State of Arkansas "now in existence or hereafter created" so as to conform with the requirements of the amendment.
 In January, 1943, in recognition of the task imposed upon it by Amendment 33, the General Assembly enacted Act 1 of 1943, in which it proceeded to arrange the terms of the board members of the institutions that it deemed to have been addressed by Amendment 33. Among the boards specifically recognized by the General Assembly in Act 1 of 1943 as being the subject of Amendment 33 was the board of the Arkansas School for the Deaf and the Arkansas School for the Blind. See Acts 1943, No. 1, §§ 1, 2(5), 9.
 The Arkansas Supreme Court has held that a statute enacted shortly after a constitutional convention should be given weight as indicating the appropriate construction of the constitutional provision under which the statute was enacted. See Hays v. McDaniel, 130 Ark. 52, 196 S.W. 934 (1917). The court has also held that while a legislative interpretation of a constitutional provision is not binding, it is persuasive and entitled to consideration if there is any doubt or ambiguity concerning the constitutional provision. See Mears v. Hall, 263 Ark. 827, 569 S.W.2d 91 (1978). See also Stayton v. Paschall, 9 F.2d 109 (D.C. Ark. 1925).
Accord Ark. Op. Att'y Gen. No. 2001-072 (noting that the Arkansas School for the Blind and the Arkansas School for the Deaf were established by statute as state charitable institutions subject to the conditions of Amendment 33).
In accordance with a proposal recently advanced by Governor Huckabee, S.B. 45 would reorganize various state agencies into ten departments. Section 8 of the bill includes the following provisions relating to the Arkansas School for the Blind and the Arkansas School for the Deaf:
 (f) The Arkansas School for the Blind, Arkansas Code § 6-43-201, and its functions, powers and duties are transferred by a type 2 transfer to the Department of Education.
 (g) The Arkansas School for the Deaf, Arkansas Code § 6-43-301, and its functions, powers, and duties are transferred by a type 2 transfer to the Department of Education.
 (h) The Board of Trustees for the Arkansas School for the Blind and the Arkansas School for the Deaf, Arkansas Code § 6-43-101, and its functions, powers, and duties are transferred by a type 1 transfer to the Department of Education.
With respect to the Board, the issue is whether these "transfers" encroach upon "powers vested in" the Board in derogation of Amendment 33. In my opinion, this question must be answered in the negative. Section 2(e) of the bill, which conditions the terms of a type 1 transfer of an Amendment 33 board, provides as follows:
 With regard to any board or commission charged with the management or control of a charitable, penal, or correctional institution, or an institution of higher learning, as provided in Amendment 33 of the Arkansas Constitution, nothing in this act shall be deemed to transfer the powers vested in the board or commission.
Section 3(e) of the bill contains an identical provision applicable to type 2 transfers. These provisions, located within the proposed definitions of "type 1" and type 2" transfers, clearly provide that no other element of the definitions setting forth the terms of a transfer will apply if such application would restrict powers vested in an Amendment 33 board on the effective date of the legislation.[1]
As you acknowledge in your request, A.C.A. § 6-43-102 (Repl. 1999) assigns the Board the following powers:
 (a) The board created in § 6-43-101 is charged with the management and control of the Arkansas School for the Blind and the Arkansas School for the Deaf.
 (b) The board shall have the power, authority, and duties formerly conferred by law on the board it succeeds including those set forth below:
 (1) The board of trustees shall exercise such powers of supervision and control as are not specifically reserved to the superintendent.
 (2) The board of trustees shall fix the salaries of officers and employees not already fixed by law.[2]
The grant of these powers dates back to Act 37 of 1927, strongly suggesting that they are "vested" under Amendment 33. Section 6-43-208(a) further provides:
 The board of trustees shall have the power to elect a superintendent, who shall receive an annual compensation to be fixed by the board of trustees. This amount shall be reported to the General Assembly.[3]
This power dates back to Act 50 of 1868 and is consequently likewise almost certainly "vested." See also A.C.A. § 6-43-103(b), dating back to Act 37 of 1927 ("The board of trustees shall select the superintendents of the institutions committed to its care.") Given S.B. 45's acknowledgment of Amendment 33's effect, I believe the Board would retain these powers even though they might have been transferred had Amendment 33 not applied.
A factual question exists whether any categories of powers not specified by statute may have "vested" in the Board as a matter of historical practice. As my predecessor noted in the attached Ark. Op. Att'y Gen.2000-007:
 The Legislature has been fairly consistent in recognizing that while it retains control over appropriations, administrative and budgetary matters, Amendment 33 insulates covered boards from legislative interference in matters of policy. See, e.g., A.C.A. § 12-27-105(1)(A); A.C.A. § 25-10-111(c)(1); A.C.A. § 25-10-104(d)(1); and A.C.A. § 25-10-402; but see A.C.A. § 6-61-201 et seq. (investing the Arkansas Higher Education Coordinating Board with specified decision-making powers in matters of higher education).
As my predecessor further noted, "substantive policymaking authority" normally resides in the board of an institution covered by Amendment 33. In my opinion, subsections 2(e) and 3(e) of the proposed legislation dictate that any such power will remain in the Board as a condition of the type 1 and type 2 transfers.
In opining on what powers of the schools' superintendents might survive the proposed transfers, my analysis will necessarily diverge significantly from the foregoing. Notwithstanding your suggestion to the contrary, Amendment 33 does not directly apply to the superintendents of the two schools. The superintendents' current powers are statutorily defined, meaning that the legislature might limit those powers unless doing so would encroach on the Board's supervisory authority under Amendment 33.
With respect to the scope of the superintendents' current powers, A.C.A. § 6-43-103(a) provides:
 The immediate conduct and management of the Arkansas School for the Blind and the Arkansas School for the Deaf shall be entrusted to superintendents.
Section 6-43-104 further provides:
 (a) The superintendents shall have power to select and engage all employees of the schools at salaries fixed by the board of trustees, reporting the same for approval to the board at the next regular meeting thereof.
 (b) The superintendents shall have the sole power to remove employees of the respective schools and may remove any employee at any time in their discretion for cause, but, in case of removal, he shall report the removal and the ground therefor to the board of trustees.
These statutes reflect that the Board currently has general policymaking authority, whereas the superintendents have authority over "immediate conduct and management" of the institutions. See also A.C.A. §6-43-102(b)(1) (reserving for the Board all powers of supervision and control not expressly assigned to the superintendents). The Board further has a vested power to "select the superintendents of the institutions committed to its care. A.C.A. § 6-43-103(b).
At issue is whether the legislature has the authority to restrict any of the superintendents' above recited powers. Section 2 of S.B. 45 contains various provisions that bear directly on the status and the selection of superintendents:
 1. Subsection (c) provides that all "administrative functions" of the transferred entity will be performed "under the direction and supervision of the secretary of the `principal department' into which it is transferred."
 2. Subsection (d)(1) provides that "the secretary of the `principal department,' with the advice and consent of the Governor, shall appoint the directors/deputy directors of the respective bureaus, offices or other divisions under the `principal department,' and they shall serve at the pleasure of the secretary."
 3. Subsection d(2) provides that "following a type 1 transfer, all other personnel, positions, titles, appropriations, funds, assets, materials, data, and information of the `transferred entity' shall be transferred to the `principal department' to be used as directed by the secretary for the effective operations of the `principal department.'"
 4. Subsections (d)(3) and (d)(4) provide that, following a type 1 transfer, the secretary alone will determine what personnel are required to conduct operations and that all such personnel shall serve at the secretary's pleasure.
Subject to the Amendment 33 qualifier discussed above, Section 3 of the proposed legislation calls for an even more draconian curtailment of a transferred entity's authority attending a type 2 transfer. Section 3 reproduces all the above recited "administrative" restrictions applicable to a type 1 transfer — restrictions that may well go beyond matters normally conceived of as "administrative" — and additionally transfers all of "the `transferred entity's' powers, authorities, duties and functions as prescribed by law, including but not limited to all rule making, regulation and licensing; the promulgation of rules, rates, regulations and standards; and, the rendering of findings, orders and adjudications."
These provisions, if enacted, would appear to divest the superintendents of their hiring authority over personnel at the two institutions. They could further be read as divesting the superintendents of their authority over the "immediate conduct and management" of their respective institutions. However, I do not believe these conclusions are inescapable. In my opinion, the legislature's power to dictate regarding operations at the School for the Blind and the School for the Deaf, including the role to be played by the superintendents, is constrained by two factors — first, the constitutional mandate that legislature support "institutions for the education of the deaf and dumb and the blind," Ark. Const. art. 19, § 19; and, secondly, the constitutional mandate that power vested in the board of a charitable institution remain in the board, Ark. Const. amend. 33. In its general supervision of policy at the institutions, the Board may well conclude that operations require the services of superintendents charged with powers very much like those they now wield. I am not prepared to opine that the legislature has the authority to abridge that power by essentially assigning all of the superintendents' current functions to a newly created Department of Education. Moreover, if S.B. 45 were enacted, I believe Amendment 33 would nevertheless dictate that the Board retain its vested power to appoint the superintendents.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
Enclosure
[1] Without belaboring the details, I will note that a type 1 transfer under S.B. 45 would centralize power in the transferee principal department far more than would a type 1 transfer as currently defined at A.C.A. § 25-2-104 (Repl. 2002). Perhaps most significantly, pursuant to S.B. 45, § 2, a type 1 transfer would invest in the secretary of a principal department all hiring authority — including, with the consent of the Governor, the authority to appoint the heads of institutions and departments — as well as the authority to direct the "personnel, positions, titles, appropriations, funds, assets, materials, data, and information of the `transferred entity' . . . to be used as directed by the secretary for the effective operations of the `principal department.'" Under current law, a type 1 transfer shifts authority only over "budgeting, purchasing, and related management functions." A.C.A. §25-2-104(c). Unaccountably, notwithstanding the fact that a type 1 transfer under S.B. 45 would shift power from a board of directors to the secretary of the principal department, the bill declares that the transfer would preserve in the transferred board "exactly the same powers, authorities, duties, and functions prescribed by law it had prior to the transfer."
S.B. 45 proposes an even more significant centralization of power by way of a type 2 transfer, which would involve a conveyance not only of the facility itself but also all of its "powers, authorities, duties, and functions." Although the issue would seem to be moot with respect to institutions governed by Amendment 33, since vested policymaking control over such institutions would remain in their boards by constitutional mandate regardless of what type of transfer occurred, the bill strikes me as confusing at least with respect to all other institutions. Given that it is in the very nature of a board of directors to exercise the "powers, authorities, duties, and functions" of the institution it controls, it is unclear what it means to transfer a board by a limited type 1 transfer while transferring the institution it governs by a sweeping type 2 transfer. If enacted, S.B. 45 appears fated to generate turf battles between governing boards who supposedly retain their authority by type 1 transfer and the secretaries of the principal departments who have been accorded that same authority by type 2 transfer. Moreover, to the extent one can debate what powers have "vested" in a board, such turf battles might arise as well between the secretaries of principal departments and Amendment 33 boards.
[2] In my opinion, this statutory provision may be constitutionally suspect in light of Ark. Const. art. 16, § 4, which provides:
 The General Assembly shall fix the salaries and fees of all officers in the State, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the State shall be fixed by law.
[3] I believe the salary provision of this statute is likewise constitutionally suspect under Ark. Const. art. 16, § 4.